245 So.2d 349

**Alton HEBERT**

v.

**POLICE JURY OF the PARISH OF VERMILION.**

**No. 51144.**

Feb. 24, 1971.

Rehearing Denied March 29, 1971.

Warren D. Rush, Lafayette, for plaintiff-appellant.

Jack P. F. Gremillion, Atty. Gen., Bertrand DeBlanc, Dist. Atty., Charles R. Sonnier, Asst. Dist. Atty., Foley, Judell, Beck, Morel & Bewley, J. Hugh Martin, New Orleans, for defendant-appellee.

DIXON, Justice.

On August 6, 1970, the Police Jury of the Parish of Vermilion by resolution called a special election in Road District No. 7 of said parish for the purpose of submitting to all registered voters in the district, not just to property taxpayers, two propositions—one dealing with the issuance of bonds for the construction and maintenance of roads in said road district and the other levying a tax on property in said district for the construction and maintenance of roads therein. The resolution purported to call the election pursuant to the authority of Louisiana Constitution, Article X, Section 10; Louisiana Constitution, Article XIV, Section 14; and, Act 277 of the Regular Session of the Louisiana Legislature for 1970 (Louisiana Revised Statutes 39:520).

Louisiana Constitution, Article XIV, Section 14(a), provides:

"Municipal corporations, parishes and schools, road, subroad, sewerage, drainage and sub-drainage districts, and irrigation districts, hereinafter referred to as subdivisions of the State, may incur debt and issue negotiable bonds, when authorized by vote of a majority in number and amount, of the property taxpayers qualified to vote under the Constitution and laws of this State, who vote at an election held for that purpose after notice published or posted for thirty (30)

days in such manner as the Legislature may prescribe, * * * "

Similar property requirements for voting in bond elections are provided by Louisiana Constitution, Article X, Section 10, and by Louisiana Revised Statutes 39:508.

In 1969 the United States Supreme Court decided the cases of Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). Those decisions were followed by Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) and Stewart v. Parish School Board, 310 F.Supp. 1172 (E.D.La.), aff'd 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129 (1970). These decisions severely limit the federal constitutionality of property or taxpayer qualifications for voting in general or special elections. The Stewart decision, supra, applying Kramer and Cipriano, holds that Louisiana Constitution, Article XIV, Section 14(a), and Louisiana Revised Statutes 39:508, are unconstitutional in a case in which they were applied to restrict suffrage in a school bond election.

The Louisiana Legislature, evidently in anticipation of just such an application of Kramer, enacted at its regular session in 1970 its Act 277 (Louisiana Revised Statutes 39:520), providing in part as follows:

"All elections held under this Part shall be held in accordance with the requirements of this Part and Article XIV, Section 14 of the Constitution of Louisiana; provided, however, that if the provisions of the Louisiana Constitution or laws which limit the right to vote at such elections to qualified electors who are also property taxpayers are removed by constitutional amendment or are held to be in violation of the Constitution of the United States by the Supreme Court of this State or the Supreme Court of the United States, then all qualified electors of the subdivision shall be entitled to vote in an election on the incurring of debt, issuance of bonds, levying of special taxes or assumption of indebtedness held under this Chapter and such debt may be incurred, bonds may be issued, special taxes may be levied or indebtedness may be assumed if approved by a vote of a majority in number of the qualified electors voting on the proposition at such election as provided in this section. * * * "

On October 3, 1970 the road election was held in Road District No. 7 of Vermilion Parish. All qualified electors residing in the road district (not just the property taxpayers) were permitted to vote in the election. The propositions carried. Plaintiff-appellant, a property taxpayer and registered voter in Road District No. 7 of Vermilion Parish, whose property would be

subject to the road tax, filed suit against the governing authority of said road district, the Police Jury of the Parish of Vermilion, to have the special bond and tax election declared null and void, to enjoin the sale of the bonds voted upon and the levy of the tax voted upon, and to enjoin defendant from executing the statutes of Louisiana purporting to permit all qualified electors, rather than just property taxpayers, from voting in road elections held pursuant to Louisiana Constitution, Article XIV, Section 14. The district court upheld the validity of the election and dismissed plaintiff's suit. Because this suit contests the constitutionality of a tax, plaintiff appealed directly to this court. Louisiana Constitution, Article VII, Section 10(1).

The position of plaintiff in this suit is: (1) that Act 277 of 1970, which provides that "if the provisions of the Louisiana Constitution or laws which limit the right to vote at such elections to qualified electors who are also property taxpayers * * * are held to be in violation of the Constitution of the United States * * *, then all qualified electors of the subdivision shall be entitled to vote * * *" is unconstitutional as violative of Louisiana Constitution, Article III, Section 27, in that its effectiveness is predicated, at a time indefinite, upon the happening of events beyond the control of the Legislature; (2) that the Legislature was without authority to enact Act 277 of 1970 because it conflicts with Louisiana Constitution, Article XIV, Section 14(a); and, (3) that that portion of Louisiana Constitution, Article XIV, Section 14(a), providing that the debt and bond issue must be authorized in an election by a vote of a majority "in number and amount, of the property taxpayers" qualified to vote, is not severable from the remainder of the section and that, therefore, the entire constitutional provision must fall.

These contentions will be treated in order. Plaintiff's first contention is that Act 277 of 1970 is unconstitutional merely because the Legislature made its operation contingent upon the judicial determination that Louisiana Constitution, Article XIV, Section 14, is unconstitutional. That contention is without merit. Just as the Supreme Court of the United States may declare the "effective date" of its legislative incursions, as it did in Cipriano, 395 U.S. 701, 706, 89 S.Ct. 1897, 1900–1901, 23 L.Ed. 2d 647, and as it did in Phoenix, 399 U.S. 204, 90 S.Ct. 1990, 1996–1997, 26 L.Ed.2d 523, so, too, may the Louisiana Legislature. "It is now well settled that the Legislature may make the operation or application of a statute contingent upon the existence of certain conditions * * *" Schwegmann Bros. Giant Super Markets v. McCrory, 237 La. 768, 112 So.2d 606, 613 (1959); accord, Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49, 62 (1942).

Examples abound of valid enactments that are "law" at the time of their passage and signature, but whose operation is suspended until the occurrence of a certain condition. Laws exist to protect the public n the event of disaster: war, flood, hurricane, riot, epidemic. We see no reason why the Legislature may not regard incursions of the federal judiciary into state matters in the same manner that it treats other unpredictable hazards.

■ Plaintiff's second contention is that the Legislature was without authority to enact Act 277 of 1970 because it conflicts with the Louisiana Constitution, Article XIV, Section 14(a). To the extent that the Louisiana Constitution conflicts with the United States Constitution, this contention is without merit. To the extent that the "property taxpayer" restriction of Section 14(a) remains valid under the federal Constitution, however, plaintiff's contention is well taken. Act 277 of 1970 applies only to the extent that Kramer, Cipriano, Turner, Phoenix and Stewart apply to the situation at hand, if at all.

Indeed, the Legislature might even provide methods for the approval of road bonds and taxes alternative to and wholly outside of the method provided in Louisiana Constitution, Article XIV, Section 14(a). In the case of Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547, 552 (1941), this court ruled:

"The Legislature under our law is empowered to pass any law not prohibited by the Federal and State Constitutions.

"From a reading of this Section of the Constitution (Article XIV, Section 14 (m)) it appears that it was intended merely as a special provision for the floating of bonds for the purpose of raising revenues to extend and improve revenue producing public utilities and not as a general limitation upon the action of the Legislature in the future. It merely provides one method by which the utilities may be improved, but does not indicate that this is the exclusive method."

In the instant case, however, the police jury purported to call the election pursuant to Louisiana Constitution, Article XIV, Section 14, and pursuant to Act 277 of 1970, which act by its own terms refers back to the constitutional provision. Accordingly, the constitutional "property taxpayer" qualification, to the extent that it is not invalidated by the federal Fourteenth Amendment, applies to the instant road election.

Plaintiff's third contention is that that portion of Louisiana Constitution, Article XIV, Section 14(a), providing that the debt and bond issue must be authorized in an election by a vote of a majority "in number and amount, of the property taxpayers" qualified to vote, is not severable from the

remainder of the section and that, therefore, the entire constitutional provision must fall. The Utah Supreme Court recently stated as dicta that a similar provision of the Utah Constitution was severable, so that the rest of the provision remains in force. Bond elections now may be held pursuant to the existing Utah provision, except that such elections must be voted upon by all qualified electors. Cypert v. Washington County School Dist., 24 Utah 2d 419, 473 P.2d 887, 890 (1970).

The Cypert case was a school bond election, and there the provision of the Utah Constitution came squarely within the proscription of Kramer. In another school bond election, the Colorado Supreme Court likewise ruled that the word "taxpaying" was severable from the equivalent Colorado statute. Said the Colorado Supreme Court:

"Considerable and possibly very awkward confusion would result if we were to hold that 'taxpaying' is not severable and declare the whole limitation and election portions of the statute unconstitutional. Therefore, we are persuaded that the better rule for application here is that the word is severable."

Pike v. School District No. 11, etc., 474 P.2d 162, 164 (Colo.1970). See also Board of Education v. Maloney, 82 N.M. 167, 477 P.2d 605 (1970).

This court is mindful that confusion would result were it to hold that the relevant clause is not severable. Clearly, the Legislature or the populace then would be required to furnish alternative methods for approving road bonds and taxes. However, merely because the United States Supreme Court has held that *certain applications* of limited suffrage are unconstitutional, this court would not be warranted in going beyond those applications and striking down the relevant restrictions as unconstitutional in every conceivable instance. Yet, by keeping the present provision on the books, by holding that the property taxpayer qualification is severable only when federally required to be severed, it may be necessary, until this area of the law becomes settled, to make a *de novo* determination in each bond election held under Louisiana Constitution, Article XIV, Section 14(a), whether that particular election falls within or without the uncertain boundaries of Kramer, Cipriano, Turner, Phoenix and Stewart. What, for example, is the law applicable to a drainage district election? Is drainage analogous to a "utility," so as to fall within the ambit of Cipriano? Or does drainage so directly benefit the property as to be analogous to a road, so as to fall within the ambit of Louisville & Nashville R. R. Co. v. Barber Asphalt Paving Co., 197 U.S. 430, 25 S.Ct. 466, 49 L.Ed. 819 (1905) and Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270 (1897)? Either the people must change the bond election laws or the United States Supreme

Court must rule on the validity of various kinds of local bond issues. This court cannot undertake to amend the Louisiana State Constitution unless it clearly conflicts with the Constitution and the laws of the United States made in pursuance thereof.

█ The decision of Stewart v. Parish School Board, 310 F.Supp. 1172 (E.D.La.), aff'd, 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed. 2d 129 (1970), has the effect of eliminating from the Louisiana Constitution and statutes those portions which provide that, in elections authorizing the incurring of debt and issuance of general obligation bonds and the levy of special taxes, only property taxpayers are entitled to vote and the vote cast must be tabulated as to the amount of the assessed valuation voted and the election carried by a majority in number and amount, *but only insofar as those provisions contravene the United States Constitution.* Until the Louisiana provisions expressly are repealed, they remain law except when their application in a particular case violates higher law.

The only cases thus far considered by the United States Supreme Court have involved general, community-wide revenue bonds (Phoenix), or utility (Cipriano) or school (Kramer, Turner) matters. The court in each case was most careful to state that it was not invalidating property qualifications altogether. In Kramer v. Union Free School Dist., 395 U.S. 621, 632, 89 S. Ct. 1886, 1892, 23 L.Ed.2d 583 (1969), Chief Justice Earl Warren wrote:

"We need express no opinion as to whether the State in some circumstances might limit the exercise of the franchise to those 'primarily interested' or 'primarily affected.'"

In Turner v. Fouche, 90 S.Ct. 532, 542 (1970), the court said:

"Without excluding the possibility that other circumstances might present themselves in which a property qualification for office-holding can survive constitutional scrutiny, we cannot say, on the record before us, that the present freeholder requirement for membership on the county board of education amounts to anything more than invidious discrimination."

In City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 1994, 26 L.Ed.2d 523, 528 (1970), Justice White, writing for a divided court, said:

"Placing such power in property owners alone can be justified only by some overriding interest of those owners which the State is entitled to recognize."

In the instant case, we hold that the relevant provisions of the Constitution and laws of Louisiana as here applied in no way are repugnant to the United States Constitution. The instant case concerns itself with local roads, not with federal

or state highways or parish thoroughfares, but with purely local roads. It is elementary that roads serve the property adjacent thereto by providing a means of ingress and egress. While it is true that a rural road in Vermilion Parish, Louisiana will serve, directly or indirectly, residents of other areas of the parish, or of other parishes, these rural roads will serve, primarily, the owners of the land through which they pass.

The fact long has been recognized, even at common law, that an access road, as opposed to a thoroughfare, is essentially an improvement to the adjacent property. As this court has said:

"Government is not instituted to attend to the concerns of the community alone, but to those of individuals also."

Bozant v. Campbell, 9 Rob. 411 (La.1845).

█ Since roads are an improvement to the adjacent property, it is reasonable that the property owners be permitted to determine whether their property shall be so improved. Particularly is this true when the roads are to be paid for by the owners of the property in the road district in question rather than by the taxpayers of the parish generally. Perhaps the local roads constitutionally *could* be paid for by a general parish-wide tax, ad valorem or otherwise, but such is not the case here. The local property owners pay for the roads. Under such circumstances, a democratic

state has an interest in compelling those who benefit most from the roads to pay for them, and therefore to decide whether the roads shall be constructed and improved. To allow those who will not be paying the special assessment to decide whether to levy a tax that will fall only upon propertied persons would be discriminatory against property owners and most undemocratic.

█ The constitutional test in each bond election is whether there is an overriding interest of property owners which the state is entitled to recognize. Phoenix, 399 U.S. 204, 90 S.Ct. 1990, 1994, 26 L.Ed.2d 523, 528. The question is whether landowners in a nonmetropolitan area are "primarily interested" or "primarily affected" by the local roads that give them access to their lands. Kramer, 395 U.S. 621, 632, 89 S.Ct. 1886, 1892, 23 L.Ed.2d 583. This court must ask whether "the benefits and burdens of the bond issue fall indiscriminately on the property owner and nonproperty owner alike." Cipriano, 395 U.S. 701, 705, 89 S. Ct. 1897, 1900, 23 L.Ed.2d 647.

In rural areas, the problem of the corporate landlord does not frequently present itself. Unlike the city dwellers described in Phoenix, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523, 528, most farm people own their land and live on their own land. The highest use of rural access roads is in transporting the produce of the land and in

carrying supplies back from the market place. It cannot be said that the value of a road is not reasonably in direct proportion to the acreage or assessed valuation of the landowners' land.

In the instant case, the burdens of the road do not fall upon property owner and nonowner alike. Nor do the benefits, for it is a recognized fact of which this court may take judicial notice that the presence of a road enhances the value of the property in its vicinity. In the case of a road, this enhancement is far more direct than the remote enhancement of property values created by better utility service.

The constitutionality of the practice of special road assessments long has been recognized by the United States Supreme Court. In the case of Louisville & Nashville R. R. Co. v. Barber Asphalt Paving Co., 197 U.S. 430, 433, 434–435, 25 S.Ct. 466, 467, 49 L.Ed. 819 (1905), Justice Holmes wrote for the court:

"The amount of benefit which an improvement will confer upon particular land—indeed, whether it is a benefit at all—is a matter of forecast and estimate. In its general aspects, at least, it is peculiarly a thing to be decided by those who make the law.

" * * *

"The plea plainly means that the improvement will not benefit the lot, because the lot is occupied for railroad

purposes and will continue to be so occupied * * * That, apart from the specific use to which this land is devoted, land in a good-sized city generally will get a benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions which, as we already have implied, a legislature is warranted in adopting."

Justice Holmes' decision has not yet been overruled. Apparently it still is the law that special road assessments do not violate the Fourteenth Amendment. Of interest is an earlier case, Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270 (1897), arising in the District of Columbia where, concededly, the Fourteenth Amendment is totally inapplicable. The Supreme Court held that it is not a violation of the Fifth Amendment to charge back road improvements against abutting property owners. Significantly, Bauman was cited last year by the United States Supreme Court as authority on a related point. United States v. Reynolds, 397 U.S. 14, 18, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).

The instant bond election appears to fall within the exception to Kramer, Cipriano, Turner and Phoenix enunciated by the United States Supreme Court. In Stewart, the federal court held the relevant portion of the Louisiana Constitution unconstitutional as there applied to a school matter. But since the question of local road assess-

ments was not there before the court, we must hold that the Stewart case has no application to the instant situation. Accordingly, in the case at bar it is apparent that the election should have been held pursuant to the Louisiana constitutional restrictions, and that participation in the election should have been limited to the property holders whose property would have been enhanced in value by the roads and who would have been taxed by the assessment. Since that was not done, since the electorate at large was permitted to vote in the election, the entire election must be invalidated.

The entire record is before this court on appeal, and the record is complete. Accordingly, there is judgment in favor of plaintiff, Alton Hebert, and against defendant, Police Jury of the Parish of Vermilion, declaring the election of October 3, 1970 in Road District No. 7 null and void, and enjoining defendant from selling the bonds and enforcing the tax purportedly approved at said election. The judgment of the district court is reversed.

TATE, Justice (dissenting).

With great respect for scholarship of the majority, I must respectfully dissent. It is well to note that the present special tax is levied upon all the property in the road district, not just upon the property benefitted by the roads to be constructed.

The general theory of the recent holdings of the United States Supreme Court is that non-property owners have a substantial interest in tax elections for improvements, since they have a substantial interest in the improvements and since indirectly (through increased cost of rents and services) they too will pay the tax. City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); Parish School Board of St. Charles v. Stewart, 400 U.S. 884, 91 S.Ct. 136, 27 L. Ed.2d 129 (1970), affirming 310 F.Supp. 1172 (1969). Therefore, the decisions hold, it is a denial of Equal Protection for the states to deny non-property owners the suffrage, where the property owners have no peculiar and overriding interest.

While I do not necessarily agree with the reasoning, we must recognize the decisions as controlling interpretations of our federal constitution, as did our legislature in enacting Act 277 of 1970. By this Act, the legislature intended to avoid chaos in the conducting of public improvement elections, through any attempt to apply provisions of our state constitution now unconstitutional by reason of these recent Supreme Court interpretations of the federal constitution.

It seems to me that we ignore the legislative intent of this Act, as well as the (rather recent) command of the United States Constitution, if we force the taxpayers in each type of public improvement election to carry their contest all the way to the United States Supreme Court.

I therefore must respectfully dissent.

BARHAM, Justice (dissenting).

This case, by stipulation of counsel, was submitted on the pleadings and written briefs of the parties. There is no evidence in the record to show the effect this bond and tax would have on the people of the area. There is insufficient evidence —in fact, a total absence of evidence— upon which to make a determination that the election should not have been called under R.S. 39:520 as amended by act of 1970. There is no showing to justify the distinction necessary for us to deny the application of the several pronouncements of the United States Supreme Court in regard to elections of this nature. Since a differentiation which I do not find in the instant case is vital to the majority position, I respectfully dissent.

Rehearing denied.

BARHAM and TATE, JJ., are of the opinion that a rehearing should be granted.