Dear Ms. Roper:
You have asked a series of questions concerning the "landowner" requirement contained in La.R.S. 33:4727 for a member of a local zoning board of adjustment
Generally, La.R.S. 33:4727 provides that a local legislative body may provide for a local board of adjustment, provide for appointments thereto, and provide for general and specific rules and standards for zoning variances. Following the guidelines created by the local legislative body, the local board of adjustment performs the administrative adjudicatory function of approving or disapproving of zoning variances; appeals from the board of adjustment are directly to courts of law.
Your first question is whether a board member must own land in the municipality or parish in which he serves. La.R.S. 33:4727 is a statute authorizing local legislative bodies to adopt ordinances creating local boards of adjustment and to provide with respect thereto. There are some provisions within La.R.S. 33:4727 that must be followed in this process, but La.R.S. 33:4727 leaves much of the detail up to the local legislative body to provide. This statute itself does not explicitly require that the board member must own land in the municipality or parish in which he serves.
Next, you ask whether the land must be owned by the board member personally or may it be owned by him indirectly through a corporation or similar business purpose entity. In our opinion, the board member himself personally must have an ownership interest in land. Generally, under Louisiana law, a corporation or other similar business purpose entity is a separate person from its individual shareholders. As long as the board member himself personally and individually has an ownership interest in land, we think that the statutory requirement is satisfied. *Page 2 
Finally, you ask whether this "landowner" requirement is valid under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and La.Constitution (1974) Article 1, § 3. You point out that the U.S. Supreme Court has invalidated property-ownership conditions for voting in certain elections and for serving in some governmental capacities, in such cases as Cipriano v. City of Houma, 395 U.S. 701,89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (provisions of Louisiana law which gives only "property taxpayers" right to vote in elections called to approve issuance of revenue bonds by municipal utility are unconstitutional as denying equal protection); Police Jury of the Parishof Vermilion v. Herbert, 404 U.S. 807, 92 S.Ct. 52, 30 L.Ed.2d 39 (1971) (summarily reversing Hebert v. Police Jury of the Parish of Vermilion,258 La. 41, 245 So.2d 349 (1971), which, as to a special bond and tax election of a road district, had held that where purely local rural roads were involved, participation in election should have been limited to property holders whose property would have been enhanced in value by roads and who would have been taxed by the assessment); Stewart v. ParishSchool Bd. of St. Charles Parish, 310 F.Supp. 1172 (U.S.D.C., E.D.La., 1970) aff'd 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129 (1970) (Louisiana statutes restricting eligibility to vote in bond elections to property taxpayers and gearing weight of each elector's vote to amount of his assessed property violated equal protection clause); and especiallyChappelle v. Greater Baton Rouge Airport District, 431 U.S. 159,97 S.Ct. 2162, 52 L.Ed.2d 223 (1977) (a per curiam reversal of Chappellev. Greater Baton Rouge Airport Dist., 329 So.2d 810 (1st Cir., 1976), which had held that statute requiring that Greater Baton Rouge Airport commissioners own property assessed in East Baton Rouge Parish was primafacie constitutional, and citing in support of the per curiam reversal the case of Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567
(1970), which held, in part, that requirement that members of board of education be freeholders amounted to invidious discrimination and was invalid). The basis for these holdings was that the challenged classification (owning immovable property and being able to serve on a school board or vote in a bond and tax election or not owning immovable property and not being able to serve on a school board or not being able to vote in a bond and tax election) rests on grounds wholly irrelevant to the achievement of a valid state objective.
In this circumstance, we are considering the qualifications of a person serving on a local zoning board of adjustment. A basic definition of the word zoning is "municipal or county regulation of land use effected through the creation and enforcement of zones under local law," Merriam-Webster's Dictionary of Law © 1996, found on Findlaw.com at

"http://dictionary.lp.findlaw.com/scripts/results.pl?co=dictionary.lp.findlaw.comtopic=f9/f9bd2176471122e53e1c59dfbc05a736"

visited on December 16, 2008. One key element of the definition of the word zoning is "land use." "Land use" is considered to be an inherent function of land ownership in Louisiana, because
 "[i]n the Civil Law, the bundle of rights that together constitutes full ownership of property comprises three separate sub-bundles: (1) usus — the right to use or possess, i.e., hold, occupy, and utilize the property; (2) abusus — the right to abuse or alienate, i.e., transfer, lease, and encumber the property, and (3) fructus — the right to the fruits, i.e., to receive and *Page 3 
enjoy the earnings, profits, rents, and revenues produced by or derived from the property,"
Rodrigue v. Rodrigue, 218 F.3d 432, 436-437 (U.S. 5th Cir. 2000)writ den. 532 U.S. 905, 121 S.Ct. 1227, 149 L.Ed.2d 137 (2001).
Moreover, a member of a local zoning board of adjustment, if he is a "landowner," has personal experience with the regulation of his own land and land use within the zones established by local government. Lease tenants, for example, may occupy the leased premises but do not make major or permanent changes to the land itself; such major or permanent changes are within the purview and authority of the land owner and landlord. Particularly related to serving as a member of a local zoning board of adjustment, a landowner will have personal experience in having to comply with the zoning ordinance with respect to his own land. He will have personal experience with possible hardships imposed on his land use and have a real idea of how hardships may be avoided through zoning variances which still comply with the general intent behind the governmental zoning pattern. This knowledge and experience directly bears on his service as a member of a local zoning board of adjustment which must decide whether to approve or disapprove of proposed zoning variances.
In this sense, the requirement of a member of a local zoning board of adjustment to be a landowner appears to be rationally related to the public duties of such member. We think it provides enough of a reasonable basis to support the general presumptive validity of the statutory provisions making such a requirement. Statutes are presumed to be valid unless and until they are struck down by a court of law. Soloco, Inc. v.Dupree, 1997-1256 (La. 1/21/98), 707 So.2d 12; Reinhardt v. Reinhardt, 1997-1889 (La.App. 1 Cir. 9/25/98), 720 So.2d 78, writ den. 1998-2697 (La. 12/18/98), 734 So.2d 635, cert. den. 526 U.S. 1114, 119 S.Ct. 1761,143 L.Ed.2d 792 (1999).
You have further informed us that this question was actually asked by a sitting member of the local zoning board of adjustment. His appointment by the proper appointing authority also has a presumtive validity. If he suspects that someone wants to challenge his right to sit on the board, our advice would be to wait until someone actually files a lawsuit making the challenge, and only if that event happens, he should decide to defend his right to sit on the board or to resign. *Page 4 
We trust that we have adequately answered your opinion request, but if you have any further questions, please do not hesitate to ask them of us. With warmest regards, we remain
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY: __________________________
 THOMASS HALLIGAN
 Assistant Attorney General
 JDC/TSH/sfj