**Alvin CLAYBRONE, Plaintiff,**

v.

**Glen THOMPSON, Warden, et al.,
Defendants.**

**Civ. A. No. 3827–N.**

United States District Court,
M. D. Alabama, N. D.

Dec. 28, 1973.

Alfred W. Goldthwaite, Montgomery, Ala., for plaintiff.

William J. Baxley, Atty. Gen., Montgomery, Ala., Herbert H. Henry, Special Asst. Atty. Gen., Birmingham, Ala., for defendants.

## ORDER

VARNER, District Judge.

*Findings of Fact and Conclusions of Law*

This cause is submitted for final judgment on the pleadings and testimony taken in open Court.

The Plaintiff is an inmate in the State Correctional Institution at Mt. Meigs, Alabama, and has been in punitive isolation or administrative segregation since October 12, 1972.

In a companion case of Diamond v. Thompson, USDC, MD of Ala., 364 F. Supp. 659, the Court determined that the transfer of the Plaintiff from the State Correctional Institution at Atmore to the correctional institution at Mt. Meigs on October 12, 1972, was an administrative matter and was properly effected without violating any of Plaintiff's constitutional rights but that the transfer of this Plaintiff from general population to administrative segregation within the prison system without conforming to the requirements of due

process of law was a violation of his rights without due process of law.

■ Under the admitted evidence in this case, there was at least one period of confinement in legal punitive isolation for this Plaintiff, those 15 days between October 24, 1972, and November 9, 1972, which were effected after a notice and hearing which afforded this Plaintiff due process of law. Plaintiff's confinement from October 12, 1972, until October 23, 1972, either in administrative segregation or punitive isolation, was in violation of his rights not to be deprived of his freedom without due process of law. There are many freedoms customarily enjoyed by the general population in the penitentiary, such as the following: the right to use athletic and recreational facilities; to walk about at appropriate times within the confines of the penitentiary; to work on a general work detail of the penitentiary; to study those courses allowable by the administration to the inmates of that institution for the purpose of completing their education in anticipation of their release; to attend and make purchases at the commissary; to attend religious worship services available to general population in the penitentiary; and other freedoms available to the general population. Before deprival of these freedoms, an inmate is entitled to notice and a hearing or, where security, safety or other administrative policy requires immediate segregation or isolation, a hearing must be provided within a reasonable time as shown by the order in Diamond v. Thompson, supra.

■ Mr. Claybrone claims judgment for damages for being deprived of his liberty without due process of law. His initial incarceration at Mt. Meigs in administrative segregation without a reasonably expeditious hearing was an illegal confinement, depriving him of privileges accorded his fellow inmates in general population. This Court finds that this illegal deprivation of rights terminated upon Mr. Claybrone's being placed in punitive isolation for having cursed an officer. This legal confinement continued until the filing of this suit. While Claybrone's bitterness at his unlawful incarceration in administrative segregation [1] may be understood and may have been a contributing cause to his problems with such an officer, it does not justify his violation of the officer's authority nor does it justify his refusal to do work lawfully assigned for his attention. Whether or not Mr. Claybrone's refusal to work and his abrogation of his duties since he was lawfully confined in punitive isolation justifies his continuation in administrative segregation is not before this Court in this cause.

Federal Courts have rather uniformly adopted the procedure of granting official immunity to prison officials and school board members as to claims for damages who, while found to be violating the constitutional rights of persons under their official authority, have done so in good faith relying on standard operating procedures. For school cases in point, see Bradley v. School Board of the City of Richmond, Va., 472 F.2d 318

---

1. It appears that this subject, at the time this suit was filed, had been incarcerated in the cell block constructed and intended for incarceration of inmates in punitive isolation for only 12 days and that, during this time, he was serving administrative segregation rather than punitive isolation. The State contends that the administrative segregation cell blocks were filled when Mr. Claybrone was brought to Mt. Meigs and that he, therefore, was put in the punitive isolation cell block for that reason. While it may be necessary to incarcerate "segregated" inmates in the punitive isolation cells temporarily while the administrative segregation cell blocks are otherwise occupied, this Court finds that a continued incarceration of any particular inmate in the punitive isolation cell block for an extended period of time, when that inmate is designated as being confined in administrative segregation, violates said inmate's right to equal protection of the laws and inflicts cruel and unusual punishment. Such inmates may be placed temporarily in such punitive isolation cells if the administrative segregation cell blocks are filled, but prison administrators shall arrange for the confinement of such an inmate to be served primarily in the cell blocks assigned to administrative segregation.

(4th Cir. 1972); Eslinger v. Thomas, 476 F.2d 225 (4th Cir. 1973); Roberts v. Williams, 456 F.2d 819, 826 (5th Cir. 1971); Rodriquez v. Jones, 473 F.2d 599 (5th Cir. 1972). The same principle has been applied to grant limited immunity to prison officials in Skinner v. Spellman, 480 F.2d 539 (4th Cir. 1973). The Supreme Court has justified the nonretroactive effect of suits for damages in such cases in the case of Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), where the Court stated that, to avoid injustice or hardship, the Court would hold nonretroactive the operation of its decisions in those cases which would produce substantial inequities if applied retroactively against officials relying in good faith on standard operating procedures not theretofore held unconstitutional by a court with jurisidction over them. See also Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288; Gill v. United States, 5 Cir., 421 F.2d 1353. The law was applied to state officers arresting alleged criminals in Westbury v. Fisher, 309 F. Supp. 12 (DC Maine, 1970); Urbano v. McCorkel, 346 F.Supp. 51 (DC N.J. 1971); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

██ Plaintiff insists that the case of United States ex rel. Neal v. Wolfe, 346 F.Supp. 569 (USDC Pa.), entered on August 7, 1972, provided a warning to Alabama Prison Officials sufficient to nullify their defense. That order was issued only two months prior to the unconstitutional action taken by prison officials of the State of Alabama in incarcerating Alvin Claybrone, Diamond and others in the administrative segregation ward of the State Prison Institution at Mt. Meigs upon their transfer from general population in Holman Prison on October 12, 1972. There was no evidence that the order was called to their attention or otherwise could provide a warning to officials of the Alabama Prison System in such a short time. This Court finds that the incarceration of Plaintiff in administrative segregation at the Mt. Meigs Institution by Defendants was done in good faith under standard operating procedures, and Defendants are officially immune to suit for money damages therefor.

██ Plaintiff, however, is entitled to compensation, if any, to which he may have been entitled as a prisoner in general population from October 12, 1972, to October 23, 1972, inclusively.

██ It is elementary that inmates, even those in punitive isolation, may not be deprived of access to courts. There are, however, reasonable limitations on the amount of access to courts, Gittlemacher v. Prasse, 3 Cir., 428 F.2d 1, and this Court finds that the requirement of the regulation of the State penal authorities of Alabama that a notary public make himself available to the inmates at least once a week and, in emergencies, immediately, for the purpose of taking their acknowledgments to legal pleadings and mailing legal pleadings to the various courts, is a reasonable regulation and that such access to courts is reasonable.

██ The Plaintiff in this case alleges that he was held incommunicado for an unreasonable length of time and that he was not allowed to send mail out or to have mail brought to him and that on one occasion he received a stack of 14 letters, including letters from his counsel, all of which had been opened and censored and some of which had been held for three months before delivery to him. The case of Lake v. Lee, D.C., 329 F.Supp. 196, exemplified a reasonable rule concerning correspondence by inmates and censorship thereof, and the prison system of Alabama and its employees are under injunction by virtue of the order in that case concerning such communications. That injunction protects the class of which this Plaintiff is a member. This Court will, therefore, not consider the allegations thereunto pertaining.

██ The Plaintiff also contends that his personal property, to-wit, a typewriter, a watch and certain legal periodicals and books, owned by him when he was

transferred from the Atmore Penitentiary to the institution at Mt. Meigs, were taken from him, and he has been denied recovery thereof. This matter was considered by Judge Johnson in the case of Diamond v. Thompson, supra, and the Court has ordered restitution of such property or reasonable substitution therefor. Since that case was a class action involving determination of the rights of this Plaintiff, this Court has no jurisdiction herein to entertain further litigation thereon.