Alvin CLAYBRONE, Plaintiff,

v.

B. H. LONG, Warden, et al., Defendants.

Civ. A. No. 4210–N.

United States District Court,
M. D. Alabama, N. D.

March 8, 1974.

Alfred Goldthwaite, Montgomery, Ala., for plaintiff.

Robert S. Lamar, Jr., Ball, Ball, Matthews & Lamar, Montgomery, Ala., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

VARNER, District Judge.

This cause is submitted on the complaint as amended, the answer of the Defendants, and the pretrial order of this Court, together with evidence, briefs

and arguments of the parties submitted in this cause on final hearing. The parties were duly represented by counsel in the proceedings before this Court.

Plaintiff was one of a number of convicts transferred from the State penitentiary at Atmore, Alabama, to the State penal institution at Mt. Meigs, Alabama, in October, 1972, during a strike at that institution because they were thought to have been involved in precipitation of said strike. The Plaintiff and his fellow transferees were brought from general population in the Atmore Prison and placed in administrative segregation at the Mt. Meigs Institution. A suit was prepared and filed in this Court by one Glenn Diamond, a co-transferee from Atmore of the Plaintiff, for the purpose of testing, among other things, the constitutional propriety of a transfer from general population in Atmore to administrative segregation in the Mt. Meigs unit. This Court (Judge Johnson) found that the initial transfer without a reasonably expeditious hearing from general population to administrative segregation constituted a violation of the due process clause of the constitution as to all of the transferees and class plaintiffs in the suit, including this Plaintiff. Diamond et al. v. Thompson et al., D.C., 364 F.Supp. 659. Shortly after having been transferred to Mt. Meigs, Plaintiff Claybrone was placed in punitive isolation because of violation of one of the regulations of the institution. Almost immediately the Plaintiff filed a petition with this Court to test the nature and causes for his confinement in administrative segregation at Mt. Meigs. This Court determined that such incarceration was legally done after proper notice and hearing in conformation with due process. Claybrone v. Thompson et al., (USDC, MD of Ala., Dec. 28, 1973), 368 F.Supp. 324. That case determined the validity and invalidity of certain stages of confinement of this Plaintiff prior to the filing of that cause on November 8, 1972. The instant proceeding was filed to determine, among other things, the propriety of this Plaintiff's confinement in administrative segregation at Mt. Meigs from the time of his release from punitive isolation in November, 1972, until the present time. Some of the time served by this Plaintiff since November, 1972, has been served in Atmore outside of the Middle District of Alabama.

The Plaintiff also contends that cruel and unusual punishment was inflicted upon him by guards' having allegedly excessively tightened his handcuffs and threatened him on an occasion when he was taken to the hospital at Mt. Meigs and that he was denied equal protection by a refusal by some of the officials at Mt. Meigs Institution to allow a certain minister and his wife to visit him on an occasion.

Jurisdiction is invoked in this cause by virtue of 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

This Court in Diamond v. Thompson, supra, made several findings pertinent hereto, as follows:

"This Court holds, therefore, that the requirements of due process apply generally to transfers from general population to administrative segregation." (At page 665)

"Additionally, the Court finds that transfer of an inmate held in administrative segregation in 'A' block cells to the cells with fewer privileges which can be used for punitive isolation does not represent a substantial loss to which due process requirements apply, provided the inmate continues in the status of administrative segregation and receives the privileges accorded that status." (At page 665)

"At the time of trial, only a few of the Atmore transferees still remain in administrative segregation. The authorities give as a reason for this confinement the continued refusal of the prisoners to work." (At page 663)

"The Court holds that, at a minimum, the prisoners transferred from Atmore to administrative segregation during the disburbance there were en-

titled to written notice of the charges against them, an opportunity to be heard and present witnesses and documentary evidence, if any, before an impartial Board composed of persons who were not directly involved in the incident, the right to confront and cross-examine adverse witnesses, and a written statement of findings by the board. * * * There are, however, unusual circumstances in which a fair inquiry can be made without compliance with all these requirements. The touchstone, as in other areas, is reasonableness. For example, if an inmate has escaped from prison, there appears to be no reason to conduct a hearing prior to placing him in the security of administrative segregation. See e. g. Krist v. Smith, 439 F.2d 146 (5th Cir. 1971). Similarly, an admitted homosexual can be segregated for his safety or the safety of other inmates without elaborate procedural safeguards. These examples, however, are in marked contrast to the transfer from Atmore. Prison officials, with justifiable cause, transferred inmates in an attempt to break the strike by removing the leadership. They had the right to do this summarily in such an emergency situation. It was not certain, however, whether all those who had been so hastily removed were in fact leaders of, or even strong supporters of, the strike. Under the circumstances reasonable investigation into the relevant facts could not be made without a due process hearing. This hearing should have been conducted within a reasonable time after transfer. Absent unusual circumstances, 48 hours would constitute a reasonable time." (At pp. 665–666)

That Court found that the transfer from general population in Atmore to administrative segregation in Mt. Meigs without a timely hearing constituted a violation of due process of law. The question is whether the Segregation Review Board, before which all persons in administrative segregation appear for review at reasonable intervals and of

which Defendant Long was a member after early December, 1972, violated Plaintiff's right to due process of law by continuing him in segregation without a hearing even after this Court had found that he should have had a hearing within a reasonable time after his transfer to segregation at Mt. Meigs.

This Court has found in Claybrone v. Thompson et al., supra, that the incarceration of Plaintiff in administrative segregation at the Mt. Meigs Institution by Defendants was unconstitutional but was "done in good faith under standard operating procedures, and Defendants are officially immune to suit for money damages therefor." That case involved Plaintiff's incarceration in segregation between his transfer to Mt. Meigs and the date of filing of that suit. This case involves his continued incarceration in administrative segregation after the filing of that suit in November, 1972.

Claybrone's continuation in administrative segregation until July 30, 1973, when this Court in *Diamond,* supra, found his initial incarceration in administrative segregation to have been unconstitutional, does not afford a basis for recovery of damages for the reasons (official immunity) expounded in Claybrone v. Thompson, supra.

Plaintiff insists that after July 30, 1973, his confinement in segregation because of the Atmore strike had been judicially declared unconstitutional and that the officials knew it and could not be immune to suit for damages for their allegedly unconstitutional conduct in continuing his allegedly unconstitutional segregation after the Court's judgment of July 30, 1973. Had the administrative segregation of this Plaintiff been continued without a hearing on the sole ground of his participation in the Atmore strike, this Court would agree with the Plaintiff.

However, as was said in *Diamond,* supra (at p. 663), referring to Atmore transferees still held in administrative segregation:

"The authorities give as a reason for this confinement the continued refusal of the prisoners to work."

Obviously, the reason for the segregation of Plaintiff after July 30, 1973, has been his refusal to work—not his alleged participation in or sympathy with the strike at the Atmore Prison.

■ The question, therefore, is whether Plaintiff has refused to work and whether he may be constitutionally confined in administrative segregation for refusal to work without compliance with all requirements (notice, hearing, etc.) usually required by due process of law before deprival of one's liberty or property. As found by Judge Johnson in *Diamond,* supra (at p. 665), there are circumstances in which fair inquiry may be made (and due process accorded) without compliance with all these requirements. This Plaintiff has insisted that he, and he alone, was competent to decide when he should work at all times. He has taken the position that he was physically unable to work and that, when he is unable to work, he would not work. The examining doctors find no such disability in this Plaintiff. Traditionally, prisoners are required to work.[1] If an able prisoner will not work or otherwise violates prison rules, his freedoms may be further restrained. There is no occasion for a hearing to determine an admitted fact. The Administrative Segregation Board prior to July, 1973, did conduct periodic reviews to determine whether Plaintiff's attitude about work had changed. While such reviews did not conform to the usual requirements of due process, a full-scale hearing would have been as unreasonable and unnecessary as would a full-scale trial after a proper plea of guilty. Plaintiff's insistence that he would work only when

he chose satisfied the requirement of fair inquiry.

■ This Court is, therefore, of the opinion that the confinement of Plaintiff in segregation between July, 1973, and the date of this hearing did not infringe Plaintiff's rights, although his confinement in administrative segregation between the time of his release from punitive isolation in November, 1972, and the time he first stated to the Segregation Review Board that he, in effect, would be the sole person who would determine whether or not he would work in the penal system was a violation of his rights. As found in *Diamond,* supra, there was no semblance of a timely hearing to determine the guilt of Diamond, Claybrone, Lake and others thought to have been leaders of the strike at Atmore and that was the only reason for further restricting their freedom in administrative segregation prior to Claybrone's refusal to work. Procedural requirements of due process (written notice, a hearing by an impartial tribunal, the rights to confront adverse witnesses and to call favorable witnesses, and a written finding by the tribunal after a full hearing) must ordinarily be accorded a prisoner before his liberty is further restricted.

Since Defendants are immune from suit for damages for that mistake and no occasion still exists for an injunction as the wrongful segregation has been discontinued, it is inappropriate to grant Plaintiff damages or an injunction in this case.[2]

■ This Court is impressed with evidence that some wrongs may have been done the Plaintiff in this suit, but not every wrong provides a cause of action in this Court. It may be remembered

---

1. "Amendment XIII. * * * Neither slavery nor involuntary servitude, *except as a punishment for crime* whereof the party shall have been duly convicted, shall exist * * *." (emphasis added)

2. While it appears that the Plaintiff has demonstrated in open Court that he is now willing to proceed to do work duly assigned

him within the prison system in accordance with medical recommendations and that he, therefore, should be immediately medically examined and placed on such duty in general population as his physical condition shall justify, this Court recognizes jurisdictional limitations to its directing such relief absent jurisdiction over personnel with authority to effect such relief.

that this Plaintiff has been an agitator—perhaps with some aggravation—since his transfer to Mt. Meigs. The Court files are replete with his mostly frivolous complaints. This Court reminds both parties of the Biblical admonition that, "whatsoever a man soweth, that shall he also reap". Neither this Plaintiff nor a guard can correct a wrong with a wrong in return. Plaintiff must remember that he is in prison as punishment for a crime for which he was convicted and the lot of a prisoner, at the expense of the taxpayer, is expected to be punishment. He must also remember that, when a guard approaches a convicted murderer with a reputation as an agitator, that guard may reasonably be apprehensive, and he may, therefore, be overly zealous and self-protective. Such slights do not rise to constitutional causes of actions. "Courts simply are not equipped to police the prisons." Novak v. Beto, 5 Cir., 453 F.2d 661. They will not and should not "interfere in the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline * * *." Royal v. Clark, 5 Cir., 447 F.2d 501. However, courts do have a duty to enforce the constitutional rights of all people and to redress their grievances. Cruz v. Beto, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263; Jackson v. Godwin, 5 Cir., 400 F.2d 529; Washington v. Lee, D.C., 263 F.Supp. 327, 331, aff'd per curiam, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212.

This Court allowed testimony in this case relative to some matters which were considered and determined in Diamond v. Thompson, supra, or other testimony which was not relevant to the pleadings in this case. It is not inappropriate, in this Court's opinion, that the Court now comment that there may still be isolated violations of the implicit or explicit mandates of the *Diamond* case that guards not discriminate against those inmates they dislike by offering to take them to exercise only when the weather is bad and that adequate medical treatment may be denied an inmate by refusing him the use of his hands to adequately wash himself at the time of his infrequent baths allowed while in administrative segregation or punitive isolation or at times when he is being treated by baths for hemorrhoids or other physical infirmities. Such practices, in the opinion of this Court, if continued on more than isolated instances, would possibly constitute cruel and unusual punishment and unequal protection of the laws, as well as contempt of this Court. Even isolated instances may deter rehabilitation—an important object of the prison system but not a violation of constitutional rights. There may also still be instances where custodial employees of the prison system do not wear name plates as required by the Court in *Diamond*. These matters were, in the opinion of the Court, before the Court in the *Diamond* case and were not properly made a part of the pleadings in this case.

Prisoners in administrative segregation with penal institutions [3] are allowed visitors only after prior arrangement and at certain hours. The evidence was that Rev. and Mrs. Williams were denied the right to visit Plaintiff on a Sunday afternoon, when visitors ordinarily may not see inmates in administrative segregation. There is no contention in this case that Rev. and Mrs. Williams sought to arrange to see Plaintiff at any predetermined time—only that they presented themselves at about 4:00 P.M., one Sunday afternoon and that they were denied the right to see Plaintiff because no special visitation could be arranged in absence of the warden.

While good penal practices, considering rehabilitation of criminals, may encourage lenient visitation of prisoners (especially by ministers), security practices demand that visitations be properly regulated and supervised. Matters of operational procedures—efficient feeding of inmates and other internal busi-

3. See Diamond v. Thompson, D.C., 364 F.Supp. 659, 663–664, for the degrees of confinement in Alabama penal institutions.

ness—suggest that orderly visitations to prisoners are essential to prison administration. The denial of the right to be visited by Rev. and Mrs. Williams at the time in this case, therefore, does not rise to cruel and unusual punishment or unequal privileges as proscribed by the Constitution, Amendment VIII. Reasonable times and procedures for visitation of prisoners are properly within the administrative discretion of prison officials.

Plaintiff contends that Mr. Moncrief and Mr. Knowles, in handcuffing him and taking him to the prison hospital in June, 1973, threatened and abused him. Defendants admit that the cuffs may have been too tight for a few minutes, but shortly after he was so handcuffed, Plaintiff reported to Warden Long that his cuffs were too tight, and the warden had the guards loosen the same. It is significant that nothing else was said at that time about the physical abuse which Plaintiff now says had then occurred. While such treatment, if it occurred, is regretable, it does not rise to constitutional proportions.

Judgment in accordance herewith will issue.