Johnny Mack **COLLINS**, Plaintiff,

v.

**L. B. SULLIVAN et al., Defendants.**

**In the Matter of Johnny Mack Collins.**

**Civ. A. Nos. 74–335–N, 75–102–N.**

United States District Court,
M. D. Alabama, N. D.
April 23, 1975.

William M. Bowen, Jr., Asst. Atty. Gen. of Alabama, Montgomery, Ala., for defendants.

Frederick T. Enslen, Jr., Montgomery, Ala., for plaintiff.

## MEMORANDUM OPINION

VARNER, District Judge.

These causes are now submitted to the Court on motion for summary judgment filed herein February 24, 1975, by the Defendants; on the motion for summary judgment filed herein March 3, 1975, by the Plaintiff; and on Plaintiff's objection to the Defendants' motion for summary judgment filed herein March 3, 1975, together with the pleadings and affidavits.

The complaint herein charges deprivation of civil rights by the placement of the Plaintiff, a State prisoner at the Mt. Meigs Medical & Diagnostic Center, in a one-man cell without observing various due process procedural safeguards, including a hearing, in violation of the Fourteenth Amendment. Action is brought under 42 U.S.C. § 1983. The defense, *inter alia*, is that the medical reasons which compelled the Plaintiff's placement in a one-man cell vitiate any need for the various due process procedural safeguards which the Plaintiff claims. By way of relief, the Plaintiff has asked for the following: A declaratory judgment that the Defendants' practices toward the Plaintiff have violated the Plaintiff's rights under the Constitution; compensatory damages of $50,000.00 from all Defendants and each of them; punitive damages of $100,000.00 from each Defendant; and preliminary and permanent injunctive relief to require the Plaintiff to be returned to the general prison population, to require the Defendants to rescind the policy directives that allow prisoners to be locked in punitive segregation without according them due process, to require the Defendants to remove from their files reports concerning the events discussed below, and to prohibit the Defendants or their employees from subjecting the Plaintiff to harassment because he instituted this suit. In addition, the Plaintiff asks that he be released from his one-man cell pursuant to his petition for writ of habeas corpus filed herein April 1, 1975.

## I. STATEMENT AND DISCUSSION OF FACTS

The Plaintiff, Johnny Mack Collins, is a black male presently serving a sentence in the State penitentiary. The Defendant, L. B. Sullivan, is the Commissioner of the Board of Corrections of the State of Alabama. Defendant, B. H. Long, is the Warden of the Mt. Meigs Medical and Diagnostic Center, a facility of the Alabama prison system. Defendant, Robert H. Bradley, is deputy warden of the Mt. Meigs Medical and Diagnostic Center.

The Plaintiff was first admitted to the Mt. Meigs Medical & Diagnostic Center in April, 1972. Since that time, the Plaintiff has been treated regularly by hospitalization and surgery for conditions of rectal condolyma (veneral warts) and anal fistula at an expense to the government of over $15,000.00. On either August 7 or 14, 1974,[1] the Plaintiff was taken out of the general prison population at Mt. Meigs and placed in a one-man cell. At no time prior to Plaintiff's placement in the one-man cell was the Plaintiff given a hearing or any of the other due process procedural safeguards that were described in the Court's opinion in Diamond v. Thompson, D.C., 364 F.Supp. 659 (1973), as being generally necessary when prisoners are taken out of the general prison population and placed in isolation.[2]

---

1. The Plaintiff claims he was placed in the one-man cell on August 7, 1974, and Defendants claim Plaintiff was placed in the one-man cell on August 14, 1974. The exact date of Plaintiff's placement in the one-man cell is not material to the issues herein.

2. In *Diamond,* page 665, the Court prescribed necessary due process procedural safeguards as follows: written notice of charges, an opportunity to be heard and to present witnesses and documentary evidence before an impartial board, the opportunity to confront and cross-examine adverse witnesses, and a written statement of findings by the board.

Plaintiff intimates in his affidavit that his placement in a one-man cell was intended as punishment in response to an accusation by an inmate that the Plaintiff participated in a homosexual act with another inmate. The Plaintiff asserts that he was informed of the accusation by a prison guard, whose identity the Plaintiff did not specify. It is clear from the record, however, that an independent and legally sufficient reason existed for Plaintiff's isolation. The Plaintiff was placed in the one-man cell for his own treatment and to prevent spread of his disease. The Acting Medical Director of the Mt. Meigs Medical & Diagnostic Center, Dr. Joseph A. Baranowski, in his affidavit of January 29, 1975, stated in pertinent part:

"Johnny Collins was first placed in a one-man cell on August 14, 1974. He has had surgical treatment for rectal fistulae with satisfactory results so far. In addition to the above, he has had anal condylomata which also had been treated; however, as soon as he is released to population, these recur because of abnormal sexual contacts. This condition is very contagious. From our experience here with this inmate, we are able to obtain a satisfactory result only when he is placed in a one-man cell. At the present time he requires only minimal attention and is fully capable of taking care of himself, and he would be returned to population were it not for

the fact that he will resume homosexual activities and the healed condition will recur." [3]

It appears that isolating the Plaintiff from other prisoners has been part of the treatment that has been given the Plaintiff at Mt. Meigs since April, 1972. In a letter to the Warden of Mt. Meigs, B. H. Long, from Dr. Baranowski about the Plaintiff, dated September 19, 1974, Dr. Baranowski stated:

"It was found, during these years (from April, 1972–September, 1974), that no complications would occur if the patient was placed in Isolation and not permitted to get into Population where he would immediately develop anal complications and would have to be returned to surgical consultants." (parenthetical expression ours) [4]

Plaintiff was informed by Dr. Baranowski "just shortly after" placement in the one-man cell that he was being kept in isolation for medical and not punitive reasons.[5] These reasons were reiterated to the Plaintiff by Warden Long on September 25, 1974.[6] Finally on October 1, 1974, a hearing was held in which the Plaintiff was again advised that he had been moved from the general population of Mt. Meigs for medical reasons.[7] Based on the evidence presented, the conclusion that the Plaintiff was placed in the one-man cell for medical reasons is overwhelming. The Plaintiff has not shown any evidence to

---

3. Defendants' Exhibit C to their motion for summary judgment.

4. Defendants' Exhibit B to their motion for summary judgment.

5. Defendants' Exhibit D to their motion for summary judgment, Dr. Baranowski's affidavit of February 20, 1975, states in pertinent part: "Johnny Collins was first placed in a one-man cell on August 14, 1974. He has been placed in this cell on numerous occasions other than for medical reasons. Also on numerous occasions when he was placed in this one-man cell he was also informed by various medical personnel who had attended him as to why he was placed in isolation. I have personally had a session with him in my office explaining the reason why we

would not return him to population. This session took place just shortly after his last placement in a one-man cell. When he specifically asked why he was retained in a one-man cell, he was given a very specific unadulterated answer—for the necessity of keeping him isolated from other inmates." The motions to amend affidavit filed April 17, 1975, and April 22, 1975, show clearly his isolation for medical reasons.

6. Defendants' Exhibit E to their motion for summary judgment, an intra office memorandum.

7. Defendants' Exhibit F to their motion for summary judgment, a summary of the hearing dated October 2, 1974.

support his allegation that his isolation was not for medical reasons but was for a constitutionally improper purpose.

The hearing that the Plaintiff had on October 1, 1974, was characterized by the Defendants as a Due Process Hearing".[8] As appears from the evidence, all that took place at said hearing was to inform the Plaintiff of the reason why he was placed in a one-man cell. There is no evidence that the Plaintiff had the opportunity to challenge the hearing board's reason through calling witnesses of his own and the like, had he wished to do so.

The Plaintiff alleges in his application that the medical problems from which he suffers are not the result of homosexual acts. However, the only evidence, particularly the medical evidence cited above, is to the contrary.

The Plaintiff further alleges that he is not a homosexual, contrary to the assertions of the Defendants. Whether or not the Plaintiff is a homosexual is not material to this case. What is in issue is whether or not the Plaintiff was placed in a one-man cell without the required due process procedural safeguards. Any determination of Plaintiff's homosexuality, if relevant, should be reserved for an appropriate hearing, if required.

Finally, the Plaintiff alleges the loss of good time, a claim flatly contradicted by the Defendants. Whether or not the Plaintiff has lost good time is a matter of record. There is no evidence whatsoever that shows that the Plaintiff has lost good time owing to any facts described in this case.

On February 6, 1975, the Plaintiff was released from medical hold to light duty; on February 6, 1975, he was transferred to Holman Prison where he is presently incarcerated in the general population.

## II. CONCLUSIONS OF LAW

Plaintiff, by his placement in a one-man cell, has been deprived of his freedom to move about, has been confined to close quarters almost continuously, and has evidently been cut off from various prison activities and facilities. The Court concluded in Diamond v. Thompson, supra, that such restrictions on prisoners represent a significant and grievous loss to prisoners' freedoms and, therefore, may be imposed only in full compliance with the due process procedural safeguards enumerated by the Court in *Diamond*.

 Ordinarily, the due process procedural safeguards such as notice of charges, a hearing before an impartial board, the right to cross-examine adverse witnesses, and a statement of findings should be brought to bear before individuals in the Plaintiff's position are deprived of significant freedoms. In the instant case, however, such a requirement would not have been reasonable. The situation with the Plaintiff was an urgent one. The Plaintiff had a history of disease which would recur upon recontact with the general prison population. Thus, the Plaintiff's own health, as well as the health of others, was in danger. Under these circumstances, it was reasonable and constitutional to remove the Plaintiff from the general prison population in a summary fashion to protect the Plaintiff's own health (and, hopefully, bring about his definitive cure) and to protect the health of others.[9]

8. Defendants' Exhibit F to their motion for summary judgment, a summary of the hearing dated October 2, 1974.

9. The State's interest in protection of Plaintiff's health exceeded the interest in his limited freedom. In Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed. 2d 484, the Court stated the following: "Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. '[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise

■ However reasonable it may have been to remove the Plaintiff from the general prison population in a summary fashion and place him in a one-man cell, the Plaintiff's due process rights did not come to an end at that point. While the Defendants made a threshold showing of good and urgent cause for the Plaintiff's immediate and summary removal to a one-man cell as set forth above, the State's right to summarily confine the Plaintiff is limited to that time within which a full hearing may not reasonably be available. Due process of law contemplates an immediate [10] post-confinement hearing to afford far more intensive scrutiny of purportedly valid medical reasons for deprival of liberties. To bring about such a scrutiny, the Plaintiff is entitled to the full panoply of due process procedural safeguards that were set forth by the Court in Diamond v. Thompson, supra, 364 F.Supp. at page 665, and to have the benefit of those safeguards in a timely manner.

■■ In the instant case, the Plaintiff was given what was styled by the Defendants as a "due process hearing" on October 1, 1974, some seven to eight weeks after his initial placement in medical segregation. In *Diamond*, page 666, the Court decided that such a due process hearing should be conducted within a reasonable time after transfer, concluding that, absent unusual circumstances, 48 hours constitutes a reasonable time. The time at which the Plaintiff's hearing was held exceeded the bounds of reasonableness and, thus, deprived the Plaintiff of due process. In addition, it appears from the Defendants' memorandum of that hearing [11] that all which took place at the hearing was that officials informed the Plaintiff why he had been placed in the one-man cell. Evidently, the Plaintiff was not given the opportunity to challenge his placement in the one-man cell, nor was he given the benefit of the other due process procedural safeguards set forth in *Diamond*, at page 665. Again the Plaintiff was deprived of due process.

■ Accordingly, this Court will grant summary judgment to the Plaintiff on the demand for declaratory judgment that the Defendants' practices toward the Plaintiff after the Plaintiff's initial detention in a one-man cell deprived the Plaintiff of due process. However, the Court will grant summary judgment to the Defendants on Plaintiff's contention that he was deprived of due process by his summary placement into medical segregation (as that placement was in response to a valid medical emergency).[12]

---

nature of the government function involved as well as of the private interest that has been affected by governmental action.' Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."

10. By "immediate" this Court contemplates no more than 48 hours unless substantial circumstances justify a continuance thereof for no more time than reasonably necessary.

11. Defendants' Exhibit F to their motion for summary judgment, a summary of the hearing dated October 2, 1974.

12. Plaintiff cites Diamond v. Thompson, supra, at 665, as standing for the proposition that, in cases where inmates thought to be homosexual are to be segregated from the general prison population, only *admitted* homosexuals can be segregated summarily. "There are, however, unusual circumstances in which a fair inquiry can be made without compliance with all these requirements. The touchstone, as in other areas, is reasonableness. For example, if an inmate has escaped from prison, there appears to be no reason to conduct a hearing prior to placing him in the security of administrative segregation. See e. g. Krist v. Smith, 439 F.2d 146 (5th Cir. 1971). Similarly, an admitted homosexual can be segregated for his safety or the safety of other inmates without elaborate procedural safeguards. * * *." Plaintiff argues that, since he is not an admitted homosexual, the Defendants' summary placement of him in a one-man cell de-

The Plaintiff's additional demand for damages brings other considerations to bear on this case. Even though the Defendants violated Plaintiff's due process rights by not providing the Plaintiff with a hearing within a reasonable time after he was placed in a one-man cell, it does not follow that the Defendants are necessarily liable for damages to the Plaintiff. It is well established that prison officials and other government officials who violate the constitutional rights of persons under their official authority are immune from claims for damages where the violations are reasonably made in good faith. See Clayborne v. Thompson, D.C., 368 F. Supp. 324 (1973); Clayborne v. Long, D.C., 371 F.Supp. 1320 (1974); Roberts v. Williams, 456 F.2d 819 (5th Cir. 1972). See also, Rodriguez v. Jones, 473 F.2d 599 (5th Cir. 1972); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The question is whether the violations of the Plaintiff's civil rights by the Defendants in the instant case were made in good faith under a reasonable misunderstanding of the law. The Defendants contend that their actions were reasonably within their understanding of the dicta in *Diamond* quoted hereinabove to the effect that admitted homosexuals may be summarily placed in segregation for their safety or the safety of others. This language in *Diamond* contemplates isolation of admitted homosexuals without a pre-

confinement hearing. It was not intended to deny the inmate of the opportunity of a hearing to determine whether or not he was an admitted homosexual if that fact is questioned even though the bare allegations that his admitted homosexuality may justify temporary isolation for reasons of safety. Yet the words, "(A)n admitted homosexual can be segregated for * * * safety * * * without elaborate procedural safeguards," in the context appearing at 364 F.Supp. page 665 of *Diamond* may reasonably be misinterpreted to refer to a permanent segregation. Supporting papers of the Defendants' reveal that the Defendants do in fact rely on this interpretation of *Diamond*.[13] The medical records would strongly indicate that Plaintiff was a homosexual, and it would be reasonable to believe therefrom that the fact was then admitted or, at least, undenied. The Plaintiff's demand for compensatory and punitive damages against the Defendants on summary judgment must, therefore, be denied.

Since the Plaintiff was transferred on February 6, 1975, to Holman Prison and placed in the general population of that institution, Plaintiff's demand for a mandatory injunction that he be returned to the general prison population and his petition for a writ of habeas corpus will be denied as moot.

Therefore, there being no material issue of fact, the motions for summary judgment are due to be granted in part and denied in part. Judgment will be entered accordingly.

---

prived him of due process. The Plaintiff's argument is without merit. The portion of *Diamond* that the Plaintiff cites is dicta. Also, it is directed to the issue of temporarily securing the safety of admitted homosexuals from attacks from other inmates or securing the safety of other inmates from the attacks of admitted homosexuals. In the instant case, the concern is not primarily with homosexuality as such, but rather with one inmate's medical problems and the medical danger he passes to other inmates. The

Plaintiff's alleged homosexuality is important only as the source of his medical problems and as the source to the medical threat he poses towards other inmates. Homosexuality is not an important issue in its own right but is entirely collateral to the main issues of the cause.

13. Defendants' interpretation of *Diamond* has been substantially set forth in Footnote #12.