## CIPRIANO *v.* CITY OF HOUMA ET AL.

No. 705.  Argued April 24, 1969.—Decided June 16, 1969.

*Kenneth Watkins* argued the cause and filed briefs for appellant.

*Eugene E. Huppenbauer, Jr.,* argued the cause for appellees. With him on the brief was *Ted J. Borowski.*

Briefs of *amici curiae* were filed by *Jack P. F. Gremillion,* Attorney General, and *John V. Parker* for the State of Louisiana et al., and by *Irving A. Jennings, J. A. Riggins, Jr.,* and *Rex E. Lee* for the Salt River Project Agricultural Improvement & Power District.

PER CURIAM.

In this case we must determine whether provisions of Louisiana law which give only "property taxpayers" the right to vote in elections called to approve the issuance of revenue bonds by a municipal utility are constitutional. This case thus presents an issue similar to the one considered in *Kramer* v. *Union Free School District No. 15, ante,* p. 621. With one judge dissenting, a three-judge District Court determined that the Louisiana provisions were constitutional. However, as in *Kramer,* we find that the challenged provisions violate the Equal Protection Clause of the Fourteenth Amendment; we therefore reverse.

The Louisiana Constitution provides that the legislature may authorize municipalities to issue bonds "[f]or the purpose of constructing, acquiring, extending or improving any revenue-producing public utility." La. Const., Art. 14, § 14 (m). Pursuant to this provision, the legislature enacted legislation authorizing Louisiana municipalities to issue revenue bonds. La. Rev. Stat. § 33:4251 (1950).[1] The legislature further provided, however, that the municipalities could issue the bonds

---

[1] The amount of debt a municipality may incur is limited by the Louisiana Constitution. La. Const., Art. 14, § 14 (f). These revenue bonds are not included in computing the municipal debt, however, if they are secured exclusively by a mortgage on the assets of the utility system and a pledge of the system revenues. La. Const., Art. 14, § 14 (m).

only if they were approved by a "majority in number and amount of the property taxpayers qualified to vote . . . [who vote at the bond election]." [2] La. Rev. Stat. § 39:501 (1950). See also La. Rev. Stat. §§ 33:4258, 39:508 (1950).

Appellee City of Houma owns and operates gas, water, and electric utility systems. In September 1967 the city officials scheduled a special election to obtain voter approval for the issuance of $10,000,000 of utility revenue bonds. The city planned to finance extension and improvement of the municipally owned utility systems with the bond proceeds. At the special election a majority "in number and amount" of the property taxpayers approved the bond issue. However, within the period provided by Louisiana law for contesting the result of the election, La. Rev. Stat. § 33:4260 (1950), this suit was instituted in the United States District Court for the Eastern District of Louisiana.

Appellant alleged that he was a duly qualified voter [3] of the City of Houma, and that he had been prevented from voting in the revenue bond election solely because he was not a property owner. He sued for himself and for a class of 6,926 nonproperty taxpayers otherwise qualified as City of Houma voters. Appellant sought to enjoin the issuance of the bonds approved at the special election and to obtain a declaratory judgment that the limitation of the franchise to property taxpayers is unconstitutional. A three-judge District Court was convened pursuant to 28 U. S. C. §§ 2281, 2284. The

---

[2] We were informed at oral argument that "number and amount" means the bonds must be approved by a majority of the property taxpayers voting and their votes must also represent a "majority of the assessed property owned by those taxpayers who are actually voting."

[3] The qualifications are of age, residence, and registration. See La. Rev. Stat. § 39:508 (1950).

court then dismissed the suit, finding the Louisiana provisions constitutional. *Cipriano* v. *City of Houma,* 286 F. Supp. 823 (D. C. E. D. La. 1968). Appellant brought a direct appeal to this Court, 28 U. S. C. § 1253; we noted probable jurisdiction. 393 U. S. 1061 (1969).

As we noted in *Kramer, supra,* if a challenged state statute grants the right to vote in a limited purpose election to some otherwise qualified voters and denies it to others,[4] "the Court must determine whether the exclusions are necessary to promote a compelling state interest." *Kramer* v. *Union Free School District No. 15, supra,* at 627. Moreover, no less showing that the exclusions are necessary to promote a compelling state interest is required merely because "the questions scheduled for the election need not have been submitted to the voters." *Id.,* at 629, n. 11.

The appellees maintain that property owners have a "special pecuniary interest" in the election, because the efficiency of the utility system directly affects "property and property values" and thus "the basic security of their investment in [their] property [is] at stake." Assuming, *arguendo,*[5] that a State might, in some circumstances, constitutionally limit the franchise to qualified voters who are also "specially interested" in the election, whether the statute allegedly so limiting the franchise denies equal protection of the laws to those otherwise qualified voters who are excluded depends on "whether all those excluded are in fact substantially less interested or affected than those the statute includes." *Id.,* at 632.

---

[4] Appellant does not challenge any other voter qualification regulations. The sole issue in this case is the constitutionality of the provisions of Louisiana law permitting only property taxpayers to vote in utility bond elections.

[5] As in *Kramer* v. *Union Free School District No. 15, supra,* we find it unnecessary to decide whether a State might, in some circumstances, limit the franchise to those "primarily interested."

At the time of the election, only about 40% of the city's registered voters were property taxpayers. Of course, the operation of the utility systems—gas, water, and electric—affects virtually every resident of the city, nonproperty owners as well as property owners. All users pay utility bills, and the rates may be affected substantially by the amount of revenue bonds outstanding.[6] Certainly property owners are not alone in feeling the impact of bad utility service or high rates, or in reaping the benefits of good service and low rates.

The revenue bonds are to be paid only from the operations of the utilities; they are not financed in any way by property tax revenue. Property owners, like nonproperty owners, use the utilities and pay the rates; however, the impact of the revenue bond issue on them is unconnected to their status as property taxpayers. Indeed, the benefits and burdens of the bond issue fall indiscriminately on property owner and nonproperty owner alike.

Moreover, the profits of the utility systems' operations are paid into the general fund of the city and are used to finance city services that otherwise would be supported by taxes. Of course, property taxpayers may be concerned with expanding and improving the city's utility operations; such improvements could produce revenues which eventually would reduce the burden on the property tax to support city services. On the other hand, nonproperty taxpayers may feel that their interests as rate payers indicate that no further expansion of utility debt obligations should be made. Of course, these differences of opinion cannot justify excluding either group from the bond election, when, as in this case, both are substantially affected by the utility opera-

---

[6] For example, a proposed decrease in utility rates may be forestalled by the issuance of new revenue bonds.

tions. For, as we noted in *Carrington* v. *Rash,* 380 U. S. 89, 94 (1965), " '[f]encing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible."

The challenged statute contains a classification which excludes otherwise qualified voters who are as substantially affected and directly interested in the matter voted upon as are those who are permitted to vote. When, as in this case, the State's sole justification for the statute is that the classification provides a "rational basis" for limiting the franchise to those voters with a "special interest," the statute clearly does not meet the "exacting standard of precision we require of statutes which selectively distribute the franchise." *Kramer* v. *Union Free School District No. 15, supra,* at 632. We therefore reverse the judgment of the District Court.

Significant hardships would be imposed on cities, bondholders, and others connected with municipal utilities if our decision today were given full retroactive effect. Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity. *Great Northern R. Co.* v. *Sunburst Oil & Refining Co.,* 287 U. S. 358, 364 (1932). See *Chicot County Drainage Dist.* v. *Baxter State Bank,* 308 U. S. 371 (1940). Cf. *Linkletter* v. *Walker,* 381 U. S. 618 (1965). Therefore, we will apply our decision in this case prospectively. That is, we will apply it only where, under state law, the time for challenging the election result has not expired, or in cases brought within the time specified by state law for challenging the election and which are not yet final. Thus, the decision will not apply where the authorization to issue the securities is legally complete on the date of this decision. Of course, our decision will not affect the validity of securities which have been sold or issued prior to this decision and pursuant to such final authorization.

The judgment of the District Court is reversed. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK and MR. JUSTICE STEWART concur in the judgment of the Court. Unlike *Kramer* v. *Union Free School District No. 15, ante,* p. 621, this case involves a voting classification "wholly irrelevant to achievement" of the State's objective. *Kotch* v. *Board of River Port Pilot Comm'rs,* 330 U. S. 552, 556.

MR. JUSTICE HARLAN, while adhering to his views expressed in dissent in *Reynolds* v. *Sims,* 377 U. S. 533, 589 (1964); *Harper* v. *Virginia Board of Elections,* 383 U. S. 663, 680 (1966); and *Avery* v. *Midland County,* 390 U. S. 474, 486 (1968), but considering himself bound by the Court's decisions in those cases, concurs in the result.