LIMITATION OF VOTER FRANCHISE Although the provisions of Article 10 9A (authorizing an ad valorem tax levy to be voted to assist in financing a county health department) are not directly invalidated by recent U.S. Supreme Court decisions, an election under said section could be defeated by proper action because the voter franchise is unconstitutionally limited under the principles of CITY OF PHOENIX v. KOLODZIEJSKI. We have considered your request for an opinion in which you outlined the following question: "Article X, Section 9A, of the Oklahoma Constitution adopted at an election conducted on July 5, 1960, authorizes counties to provide a special ad valorem tax levy to assist in financing a county health department. This amendment to the Constitution provides that the levy shall be 'approved by a majority of the qualified ad valorem tax paying voters of the county,. . ." The Legislature, in vitalizing this amendment in its most recent enactment, provides in Title 63 O.S. 1-223 [63-1-223] (1970), that 'such levy is approved by a majority of the qualified ad valorem tax paying voters of the county, . . ." In view of recent decisions by the United States Supreme Court with regard to approval of bond issues, will you tell us whether or not, in your opinion, such Supreme Court opinions invalidate the requirement that the levy in question be approved by a majority of the qualified ad valorem taxpaying voters' and advise us to the procedure that should be followed in a county with regard to approving the public health levy in the event the Requirement for a vote by ad valorem taxpaying voters is invalidated. "DISCUSSION: Although none of the Supreme Court cases referred to in your question have directly considered the question of the voter qualifications at an election to provide a special ad valorem tax levy, the principles of those cases directly and inescapably affect the voter qualifications in such an election. Cipriano v. City of Houma, 395 U.S. 701,23 L.Ed.2d 647, 89 S.Ct. 1897 (1969) involved the question of whether a state could validly limit the voter franchise to ad valorem taxpayers in a revenue bond election. The Cipriano case standing alone would have little direct bearing upon the question of whether the voter franchise could be limited to ad valorem taxpayers in an election to pass a special ad valorem tax levy. However, the first of the three recent applicable decisions by the U.S. Supreme Court, Kramer v. Union Pre School District, 395 U.S. 621, 23 L.Ed.2d 583,89 S.Ct. 1886 (1969) would be relevant in that the Court held that the voter franchise in a school board election could not be limited to ad valorem taxpaying voters even though the school board by statute could effectively increase the ad valorem tax without a direct vote of the people. Finally, in City of Phoenix v. Kolodziejski, 399 U.S. 204,90 S. Ct. 1990, 26 L.Ed. 2d 523 (1970) the Court held that the voter franchise could not be limited to ad valorem taxpayers in a general obligation bond issue even though the general obligation bonds would be satisfied primarily through ad valorem taxation. A part of the reasoning by the Court was as follows: "Third, the justification for restricting the franchise to the property owners would seem to be strongest in the case of a municipality which, unlike Phoenix, looks only to property tax revenues for servicing general obligation bonds. But even in such a case the justification would be insufficient. Property taxes may be paid initially by property owners, but a significant part of the ultimate burden of each years' tax on rental property will likely be borne by the tenant rather than the landlord since, as the parties also stipulated in this case, the landlord will treat the property tax as a business expense and normally will be able to pass all or a large part of this cost on to the tenants in the form of higher rents. Since most city residents not owning their own homes are lessees of dwelling units, virtually all residents share the burden of property taxes imposed and used to service general obligation bonds. Moreover, property taxes on commercial property, much of which is owned by corporations having no vote, will be treated as a cost of doing business and will normally be reflected in the prices of goods and services purchased by non-property owners and property owners alike." Since the above cases are decided upon the principles of the equal protection clause of the14th Amendment to the United States Constitution, the conclusions reached in the above cases have a direct bearing upon the constitutional and statutory provisions in Oklahoma which are affected thereby. None of the above Supreme Court cases have directly considered the question of a limitation of a voter franchise to ad valorem tax payers in an election to provide a special ad valorem tax levy. Therefore, Article X, Section 9(A) of the Oklahoma Constitution which limits the vote to "a majority of the qualified ad valorem tax paying voters of the county," in an election to provide a special ad valorem tax levy to assist in financing a county health department is not directly invalidated by the Supreme Court decisions. However, the principles of the three cited Supreme Court Cases and more particularly the reasoning set forth in the Phoenix case indicates with little doubt that the same decision would be reached by the U.S. Supreme Court were it presented with the question of the validity of ArticleX, Section 9A of the Oklahoma Constitution. OPINION It is therefore the opinion of the Attorney General that although the provisions of Article X, Section 9A of the Oklahoma Constitution which restricts the franchise to ad valorem tax paying voters is not directly invalidated by the recent United States Supreme Court decisions, an election under that said section could be defeated by proper action. On the other hand, should such an election pass without contest it would be valid. With regard to your question as to the procedure that should be followed in a county under the above constitutional statutory authority, an election limited to ad valorem tax paying voters would be subject to contest. An election granting the franchise to all qualified voters would have no validity since there is no constitutional nor statutory authority for the same. There are, however, two methods by which the constitutional and statutory authority may be amended to extend the franchise to all qualified voters. One, is by means of a case in the Oklahoma Supreme Court and the other is by amendment of the constitution and statute by authorized method. (Gary M. Bush) ** SEE: OPINION NO. 71-413 (1971) **