THE HUMANE SOCIETY OF THE UNITED STATES, NEW
JERSEY BRANCH, INC., A NON-PROFIT CORPORATION
OF THE STATE OF NEW JERSEY; THE SIERRA CLUB,
INC., A CALIFORNIA NON-PROFIT CORPORATION;
HERMINA C. M. ANDREWS AND FRED FERBER, CITI-
ZENS AND TAXPAYERS OF THE STATE OF NEW
JERSEY, PLAINTIFFS, v. NEW JERSEY STATE FISH
AND GAME COUNCIL, AN AGENCY OF THE STATE
OF NEW JERSEY; WILLIAM T. CAHILL, GOVERNOR
OF THE STATE OF NEW JERSEY; THE SENATE OF
THE STATE OF NEW JERSEY, AND ALFRED N.
BEADLESTON, PRESIDENT THEREOF; THE NEW JER-
SEY STATE FEDERATION OF SPORTSMEN'S CLUBS,
A NON-PROFIT ASSOCIATION OF THE STATE OF NEW
JERSEY, AND ROBERT SMALLEY, PRESIDENT
THEREOF; AND THE STATE OF NEW JERSEY, ACT-
ING THROUGH THE AGRICULTURAL CONVENTION
OF THE STATE OF NEW JERSEY, A PUBLIC BODY
ORGANIZED UNDER THE REVISED STATUTES OF
NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided June 12, 1974.

*Mr. Peter A. Buchsbaum* for plaintiffs.

*Mr. Leo J. Barrett* for defendant New Jersey State Federation of Sportsmen's Clubs and Robert Smalley.

*Mr. John M. Van Dalen* for defendants New Jersey State Fish and Game Council, William T. Cahill, Governor of the State of New Jersey, the Senate of the State of New Jersey and Alfred N. Beadleston, State of New Jersey acting through the Agricultural Convention of the State of New Jersey (*Mr. William F. Hyland,* Attorney General of New Jersey).

*Mr. Paul A. Lenzini* for International Association of Game, Fish and Conservation Commissioners and the National Wildlife Federation, *amici curiae* (*Messrs. Chapman, Duff & Lenzini,* attorneys).

*Mr. Dennis C. Linken* for New Jersey Council of Churches, *amicus curiae* (*Mr. Edward J. Insley,* P. A., attorney).

CIOLINO, J. S. C. This action has been submitted to the court on a limited stipulation of facts and legal argument. Plaintiffs Humane Society and Sierra Club are nonprofit

organizations having many members who are interested in and knowledgeable about the conservation of fish and game in the State, and many members who use and enjoy the State's wildlife, parks, waters and open lands. These plaintiffs, along with the individual plaintiffs, wish an opportunity to participate in the decision-making process of defendant Fish and Game Council. Plaintiff corporations are not now members of the New Jersey State Federation of Sportsmen's Clubs and have not requested membership because of policy decisions and personal beliefs.

Plaintiffs question the composition of the Fish and Game Council as provided for in *N. J. S. A.* 13:1B–24. While they do not question the qualifications set forth in the statute, the thrust of the attack is to the origin of the nominations. The issue presented to the court is whether the process of appointing members to the Fish and Game Council is violative of the equal protection clause of the Fourteenth Amendment of the Federal Constitution and the concept of equal protection implicit in the New Jersey Constitution of 1947.

The part of the statute which is being questioned, *N. J. S. A.* 13:1B–24, provides as follows:

There shall be within the Division of Fish and Game, a Fish and Game Council which shall consist of eleven members, each of whom shall be chosen with due regard to his knowledge of and interest in the conservation of fish and game. Each member of the council shall be appointed by the Governor, with the advice and consent of the Senate. Three of such members shall be farmers, recommended to the Governor for appointment to the council by the Agricultural Convention held pursuant to the provisions of article two of chapter one of Title 4 of the Revised Statutes; six of such members shall be sportsmen, recommended to the Governor for appointment to the council by the New Jersey State Federation of Sportsmen's Clubs; and two of such members shall be commercial fishermen * * *.

Plaintiffs' contention is that the aforementioned provisions limit the prospective appointees of the Fish and Game Council to three categories of persons, *i. e.*, either sportsmen, farmers or commercial fishermen. Simply stated, the question

is whether the State may exclude from consideration for appointment a person, otherwise qualified, because he is not a sportsman, farmer or commercial fisherman.

Addressing itself first to the question of which standard of equal protection is to be applied in the case at bar, the court must consider whether to apply the traditional standard under which a legislative classification "must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest," *Frontiero v. Richardson,* 411 *U. S.* 677, 683, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973), or the more stringent standard which may be termed "the compelling state interest standard." Under this second standard the essential inquiry would be whether the exclusions are "necessary to promote a compelling state interest." *Kramer v. Union Free School District,* 395 *U. S.* 621, 627, 89 S. Ct. 1886, 23 L. Ed. 2d 583 (1969). *Kramer, supra,* dealt with the classifications affecting the right to vote, and in that matter the Supreme Court applied the more stringent compelling state interest standard.

In *Kramer* the court said:

Accordingly, when we are reviewing statutes which deny some residents the right to vote, the general presumption of constitutionality afforded state statutes and the traditional approval given state classifications if the Court can conceive of a "rational basis" for the distinctions made are not applicable [citations]. The presumption of constitutionality and the approval given "rational" classifications in other types of enactments are based on an assumption that the institutions of state government are structured so as to represent fairly all the people. However, when the challenge to the statute is in effect a challenge of this basic assumption, the assumption can no longer serve as the basis for presuming constitutionality. [at 627–628, 89 S. Ct. at 1890]

The court then reasoned that this would require an application of the more stringent standard.

As plaintiffs' complaint is that the appointive procedure to the Fish and Game Council does not fairly represent all of the people, it would appear at first blush that the more stringent standard should be applied herein. Plaintiffs' at-

tack upon the selective process of a unit of government would appear similar to the issues presented in the voting rights cases. In *Turner v. Fouche,* 396 *U. S.* 346, 90 S. Ct. 532, 24 L. Ed. 2d 567 (1970), the issue presented was whether the more stringent equal protection standard should apply to a case involving exclusions from office-holding as distinguished from exclusion from voting. While the issue was presented, the court did not squarely answer the question because it decided the merits of the case apart from this issue. However, the court did say:

Subsequent to the ruling of the District Court, this Court decided *Kramer v. Union Free School District,* 395 *U. S.* 621, 89 *S. Ct.* 1886, 23 *L. Ed.* 2d 583, and *Cipriano v. City of Houma,* 395 *U. S.* 701, 89 *S. Ct.* 1897, 23 *L. Ed.* 2d 647. The appellants urge that those decisions require Georgia to demonstrate a "compelling" interest in support of its freeholder requirement for school board membership. The appellees reply that *Kramer* and *Cipriano* are inapposite because they involved exclusions from voting, not from office-holding. We find it unnecessary to resolve the dispute, because the Georgia freeholder requirement must fall even when measured by the traditional test for a denial of equal protection: whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objection. [at 362, 90 S. Ct. at 541]

In the case of *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 *U. S.* 719, 93 S. Ct. 1224, 35 L. Ed. 2d at 659 (1973), a case involving the limitation of the franchise as to the election of members of a special-purpose unit of government, the court applied the "traditional" standard. In that matter the unit of government was a water storage district with power to plan projects and execute approved projects "for the acquisition, appropriation, diversion, storage, conservation and distribution of water"; to acquire and operate necessary works and to fix tolls for the use of water. The Supreme Court found that the district did not exercise what might be thought of as the normal governmental authority.

The Fish and Game Council likewise is a "special purpose" unit of government. It has the power to promul-

gate state fish and game codes "for the purpose of providing an adequate and flexible system of protection, propagation, increase, control and conservation of fresh water fish, game birds, game animals and fur-bearing animals in this State * * *." *N. J. S. A.* 13:1B–30. It also has the power to formulate "comprehensive policies for the protection and propagation of fish, birds and game animals * * *." *N. J. S. A.* 13:1B–28. Its function clearly is to deal with a specialized subject matter. Similar to the water storage district in *Salyer Land, supra,* the Fish and Game Council does not exercise what might be thought of as "normal" governmental authority. As the Supreme Court applied the traditional equal protection test to the questions involved in *Salyer Land,* I am of the opinion that the traditional test should be applied in the present case. In *Salyer Land* the court said:

> But in the type of special district we now have before us, the question for our determination is not whether or not we would have lumped them together had we been enacting the statute in question, but instead whether "if any state of facts reasonably may be conceived to justify" California's decision to deny the franchise to lessees while granting it to the landowners. [at 732, 93 S. Ct. at 1231]

■■ The Legislature may prescribe qualifications which reasonably relate to the needs of office-holding or to the specialized demands of an office. *Gangemi v. Rosengard,* 44 *N. J.* 166 (1965). The same is true where the office is appointive rather than elective. *Kohler v. Barnes,* 123 *N. J. Super.* 69 (Law Div. 1973). The Legislature, however, cannot enact arbitrary exclusions from office or from candidacy for office. *Gansz v. Johnson,* 9 *N. J. Super.* 565 (Law Div. 1950).

■ The question to be determined is, can one reasonably conceive of any state of facts justifying the exclusion of a person from consideration for appointment to the Fish and Game Council who is knowledgeable and interested in conservation of fish and game simply because he isn't either a

sportsman, farmer or commercial fisherman? Further, is it rational for the state to exclude such a person from consideration for appointment and does such exclusion reasonably serve any legitimate objective, or is it arbitrary?

It is the opinion of this court that such exclusion is arbitrary and does not reasonably relate in any way to the office in question. The crucial factor determinative of one's qualification for membership of the Fish and Game Council is one's "knowledge of and interest in the conservation of fish and game." *N. J. S. A.* 13:1B–24. There appears to be no reason in logic as to why such person must be either a sportsman, farmer or commercial fisherman.

██ Plaintiffs have also urged in argument that their interest in the public trust in wildlife is impaired by *N. J. S. A.* 13:1B–24 because the statute vests the administration of that trust in a selective minority of citizenry. It should be noted that plaintiffs do not allege any misconduct by the Council or any mismanagement or depletion by it of the state's fish or other wildlife. The principle of the public trust doctrine is that there is some property common to all citizens. Because only a "transient usufructory possession" can be had of such property, "the wisdom of that law has placed it in the hands of the sovereign power, to be held, protected and regulated for the common use and benefit." *Arnold v. Mundy,* 6 *N. J. L.* 1, 71 (Sup. Ct. 1821). The State, however, is not precluded from imposing qualifications upon those governmental positions created for the governance of the public trust which are reasonably related to such governance. It is the opinion of this court that the question narrows down to whether the qualifications imposed by the state on such positions are arbitrary and unreasonable. Resolution of this inquiry obviates the necessity of deciding whether the public trust property is being governed for the benefit of private individuals.

██ ██ The issue of whether there has been an unconstitutional delegation of legislative functions to the Council has also been· raised. Legislative functions and responsi-

bilities may not be delegated to private bodies which are not subject to public accountability, "at least where the exercise of such power is not accompanied by adequate legislative standards or safeguards * * *." *Group Health Ins. of N. J. v. Howell*, 40 *N. J.* 436, 445 (1963). The Legislature has the power to delegate to an administrative agency the exercise of legislative power with respect to a specific subject matter. The Legislature, however, must furnish reasonably adequate standards to guide the agency so that it is not vested with arbitrary and unbridled power. *State v. Seligson*, 106 *N. J. Super.* 329, (App. Div. 1969). "But the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power." *Ward v. Scott*, 11 *N. J.* 117, 123–124 (1952). The Fish and Game Council has the power to enact regulations as part of the Fish and Game Code of the State. By statute some are based on scientific investigation and research. *N. J. S. A.* 13: 1B–31 & 32. A public hearing must be held prior to the adoption of any regulation. *N. J. S. A.* 13:1B–33. All such regulations are subject to judicial review. *N. J. S. A.* 13: 1B–34. The purpose of the State Fish and Game Code is to provide "an adequate and flexible system of protection, propagation, increase, control and conservation of fresh water fish, game birds, game animals and fur-bearing animals * * *." *N. J. S. A.* 13:1B–30. Each member of the Council is appointed by the Governor with the advice and consent of the Senate. *N. J. S. A.* 13:1B–24. Members of the Council may be removed by the Governor in accordance with *N. J. S. A.* 13:1B–26.

It is the determination of this court that under the authority of *Ward v. Scott, supra,* the standards set forth in the provisions of the statute, though couched in general language, are sufficient to negate any possible constitutional infirmity.

As a final point, plaintiff urges that impartial administration of the public trust in wildlife is violated by an in-

herently biased and defective delegation of the administration of this trust to a private group which has a pecuniary interest in promoting its particular goals. It is the opinion of this court that that argument must fall as there has been no fact adduced at trial to indicate that we are dealing with the regulation of an industry by persons engaged in that industry who may be pecuniarily motivated. The court cannot conceive of how the present members of the Council may have a pecuniary interest in its regulation. · All serve without compensation. The court must reject any argument by plaintiff concerning the restriction of competition since this is not a matter involving the clashing of economic interest. Nothing has been adduced at trial which would indicate a favoring of one group over another or the protection and advancement of the economic interest of one group as against the competition.

For the reasons set forth aforesaid, it is the finding and determination of this court that the State may not exclude from consideration for appointment to the Fish and Game Council a person otherwise qualified because he is not either a sportsman, farmer or commercial fisherman.