596 So.2d 840 (1992)
Parey P. BRANTON, et al., Plaintiffs-Appellants,
v.
WEBSTER PARISH SCHOOL BOARD, Defendant-Appellee.
No. 24197-CA.
Court of Appeal of Louisiana, Second Circuit.
March 20, 1992.
*841 Taylor W. O'Hearn, Shreveport, for plaintiffs-appellants.
James M. Bullers, Dist. Atty., Minden, David Wolf, New Orleans, for defendant-appellee.
Before SEXTON, LINDSAY and STEWART, JJ.
LINDSAY, Judge.
The plaintiffs, Parey P. Branton and J.W. Eason, appeal from a trial court judgment rejecting their efforts to invalidate a school district bond election. For the reasons assigned below, we affirm.

FACTS
The plaintiffs, registered voters and property taxpayers in Webster Parish, filed suit to declare void the special election held on January 18, 1992, in Consolidated School District 1, Webster Parish. The election concerned the issuance of bonds to be retired by an increase of ad valorem taxes on property situated in the school district. The election was open to all registered voters. However, the plaintiffs contend that, under the provisions of LSA-R.S. 39:702, the "qualified" voters in an election to levy a special tax to benefit public schools are restricted to property taxpayers only. They complain that the election should not have been open to all registered voters. The petition also questioned the propriety of certain actions of the school board in connection with the election.
On March 13, 1992, a hearing was held in the Webster parish district court. At the hearing, the parties agreed that the only issue before the court which could invalidate the election was whether registered voters who did not own real property in the school district should have been allowed to vote on the bond issue.
The plaintiffs contended that LSA-R.S. 39:702, which restricts special tax elections to property taxpayers only, is applicable to this case and that the statute is still valid. They contended that the cases cited by the defendant, and which are discussed below, are inapplicable because they address "broad" elections, not a "special" bond issue election in a "narrowly confined area" such as the present school district. The plaintiffs also complained that persons who do not own real estate or who are members of the transient population, even though they are registered voters, should not be able to vote in an election which determines whether property owners are required to pay ad valorem taxes for the next 15 years.
The trial court ruled that since the bond election was held in accordance with Louisiana law and the equal protection clause of the fourteenth amendment of the United States Constitution, there were no grounds to invalidate the election. The relief sought by the plaintiffs was denied, and all court costs were assessed against them.
The plaintiffs appealed.

LAW
In 1969, in two separate cases rendered on the same day, the U.S. Supreme Court ruled that voting restrictions of the type sought by these plaintiffs are an unconstitutional denial of equal protection. In *842 Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), the court ruled that a New York statute, which restricted the voting franchise in certain school board elections to owners or lessees of taxable realty (or their spouses) and parents or guardians of children in public schools, denied equal protection to those persons who were excluded. In Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), the court held that denying nonproperty owners the right to vote in elections on revenue bonds to finance municipal utilities was a denial of the Fourteenth Amendment rights of those nonproperty owners since they too were substantially affected by the utility operations and the issuance of the bonds.
In both Kramer and Cipriano, supra, the court found that where a state statute gives the right to vote in limited purpose elections to some qualified voters, but denies it to others, the state must show that a compelling state interest exists which makes such a distinction necessary. The court specifically declined to decide whether a state might, in some circumstances, limit the franchise to those "primarily interested" or "primarily affected," choosing instead to assume arguendo that the state could do so.
In City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), the court held that the same rules apply to elections for the issuance of general obligation bonds.
Stewart v. Parish School Board of the Parish of St. Charles, 310 F.Supp. 1172 (E.D.La.1970), affirmed 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129 (1970), concerned an election virtually identical to the one in the present case. There, nonproperty owners were not allowed to vote in a special election to determine whether the parish school board should be authorized to issue bonds for capital acquisition and improvement of public schools in the parish. As in the instant case, those bonds were to be paid off by property taxes. The court in Stewart relied upon Kramer and Cipriano. It stated:
The special interest property taxpayers have in bond elections is not the compelling State interest that would justify excluding a large portion of the electorate that has a substantial stake in public education.
The court specifically declared unconstitutional La. Const. 1921 Art. XIV, § 14(a) and LSA-R.S. 39:508 insofar as they restricted elections to property taxpayers and required the weighing of the votes according to assessed valuation. By clear implication, the statutes relied upon by the plaintiffs in the present case are also unconstitutional insofar as they contain similar provisions.
In the instant case, the plaintiffs contend that the property owners are the only ones who pay the property taxes and that transient tenants will vote on the issue and then move away. These fears were addressed in footnote 13 of the court's opinion in Stewart. The court noted that the assumption that only property owners pay property tax is false because the cost is passed on to lessees in the form of rent. The transiency of tenants is resolved by residency qualifications for voting. Additionally, the court observed that no Supreme Court case had recognized a constitutional difference between a general election and a special purpose election. Cf. Cox v. City of New Orleans, 250 So.2d 47 (La.App. 4th Cir.1971).
In 1970, the Louisiana legislature took cognizance of the constitutional problem of restricting to property taxpayers the right to vote in elections involving the incurring of debt or the levying of special taxes. During its regular session, the legislature passed Acts 1970, No. 377 which provided that should the restriction be declared unconstitutional, then the elections would be open to all qualified voters. See also Acts 1970, No. 277, which added LSA-R.S. 39:520, which contained the same provisions.
The plaintiffs rely upon LSA-R.S. 39:702, 781 and 784, which pertain only to tax elections and restrict those eligible to vote to property taxpayers. None of these provisions, which pre-date 1969 and originated *843 under the Louisiana Constitution of 1921, have ever been amended. However, these statutes are not applicable to the present election which calls for the issuance of general obligation revenues bonds. Further, these statutes were made unconstitutional by Stewart, supra, and, as discussed infra, have been superseded by Chapter 6-A of the Louisiana Election Code, LSA-R.S. 18:1281, et seq.
Louisiana's present constitutional and statutory scheme clearly allows the inclusion of all registered voters in elections of the type presently under consideration. Art. I, § 10 of the Louisiana Constitution of 1974 guarantees the right to vote to all citizens of the state 18 years of age, except interdicted mental incompetents and imprisoned convicted felons. Art. VI, § 33 authorizes political subdivisions to issue general obligation bonds with the approval of a majority of the electors, while Art. VI, § 22 provides that when the constitution requires an election to be conducted it is to be held according to the laws in effect pertaining to elections for incurring bonded indebtedness and special taxes.
The legislature enacted Chapter 6-A of the Louisiana Election Code in Acts 1977, No. 545, to implement Art. VI, § 22 by establishing a uniform procedure to conduct elections to authorize the issuance of bonds, the assumption of indebtedness, and the imposition or increase of taxes by a political subdivision. See LSA-R.S. 18:1281. LSA-R.S. 18:1290 provides that "[a]ll qualified electors" of a political subdivision are entitled to vote in an election on the issuance of bonds, levying or increase of a tax, or the assumption of indebtedness by the political subdivision. This statute, which constitutes the latest expression of the legislative will, further specifies that no voter shall be required to vote assessed valuation of property.
Current Louisiana law allows all registered voters in a district to vote in a bond election such as the one at issue in this case. The plaintiffs have not referred to any theory to support their position which has not previously been rejected by the United States Supreme Court. Nor have they cited any new statute or jurisprudence in support of their position. They have presented no compelling state interest which would justify restricting the election to property taxpayers only. The plaintiffs' suit has no basis. Consequently, we conclude that the trial court was correct in rejecting the plaintiffs' demands.

CONCLUSION
The judgment of the trial court is affirmed, at plaintiffs' cost.
AFFIRMED.