Dear Ms. Odom:
You requested the opinion of this office concerning questions you have regarding elections for drainage districts. Your first question is if the drainage districts decide to proceed with an acreage tax, who votes in each district — landowners or residents of the district? How many votes would be counted — one vote per acre owned in the district, one vote per person who lives in the district, or one vote per landowner?
La. R.S. 38:1770, as amended in the 1995 Regular Session of the Legislature, provides as follows in pertinent part:
 "A. Gravity drainage districts and gravity subdrainage districts through their governing authority may impose and collect annually, in addition to the tax authorized by R.S. 39:551, an acreage tax or forced contribution not exceeding fifty cents per acre per year on each and every acre of land composing the gravity drainage district or gravity subdrainage district for a period not exceeding forty years . . . the payment of which is supported or secured by acreage taxes, or forced contributions, running no longer than forty years from the date thereof, when secured by the acreage tax not exceeding fifty cents per acre, when authorized so to do by a vote of a majority in number of acres owned by landowners qualified to vote under the Constitution and laws of Louisiana, who vote at an election held for that purpose, and a majority in number of landowners of the gravity drainage district or gravity subdrainage district qualified to vote under the Constitution and laws of Louisiana, who vote at an election held for that purpose in the manner as provided in this Part . . ." (Emphasis added)
The emphasized language is identical to the language of the statute prior to the 1995 amendment. This statute requires that for the election to pass, it is necessary to obtain the approval of a majority in number of acres owned by landowners who vote as well as a majority in number of landowners of the district who vote. Such language is constitutionally suspect as it creates a voting classification based upon ownership of property.
As a general rule, all statutes are presumed to be constitutional; however, there are several cases which hold statutes similar to the one in question, unconstitutional. In 1969, in two separate cases rendered on the same day, the U.S. Supreme Court ruled that certain voting restrictions are an unconstitutional denial of equal protection. In Kramer v.Union Free School District, 395 U.S. 621,89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), the court ruled that a New York statute, which restricted the voting franchise in certain school board elections to owners or lessees of taxable realty (or their spouses) and parents or guardians of children in public schools, denied equal protection to those persons who were excluded. InCipriano v. City of Houma, 395 U.S. 701,89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), the court held that denying nonproperty owners the right to vote in elections on revenue bonds to finance municipal utilities was a denial of the Fourteenth Amendment rights of those nonproperty owners since they too were substantially affected by the utility operations and the issuance of the bonds. In both Kramer andCipriano, supra, the court found that where a state statute gives the right to vote in limited purpose elections to some qualified voters, but denies it to others, the state must show that a compelling state interest exists which makes such a distinction necessary.
In City of Phoenix v. Kolodziejski, 399 U.S. 204,90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), the court held that the same rules apply to elections of the issuance of general obligation bonds. Stewart v. Parish School Board of theParish of St. Charles, 310 F. Supp. 1172 (E.D. Ka. 1970), affirmed 400 U.S. 884, 891 S.Ct. 136, 27 L.Ed.2d 129 (1970), concerned an election where nonproperty owners were not allowed to vote in a special election to determine whether the parish school board should be authorized to issue bonds for capital acquisition and improvement of public schools in the parish. The bonds were to be paid off by property taxes. The court inStewart relied upon Kramer andCipriano to declare the Louisiana constitutional provision and statutory provision unconstitutional insofar as they restricted elections to property taxpayers and required the weighing of the votes according to assessed valuation.
Louisiana's present constitutional and statutory scheme clearly allows the inclusion of all registered voters in elections of the type presented. La. Const. Art. I, Sec. 10 guarantees the right to vote to all citizens of the state 18 years of age, except interdicted mental incompetents and imprisoned convicted felons. Art. VI, Sec. 22 provides that when the constitution requires an election to be conducted, it is to be held according to the laws in effect pertaining to elections for incurring bonded indebtedness and special taxes.
The legislature enacted Chapter 6-A of the Louisiana Election Code to establish a uniform procedure to conduct elections to authorize the issuance of bonds, the assumption of indebtedness, and the imposition or increase of taxes by a political subdivision. La. R.S. 18:1281. La. R.S. 18:1290 relative to the qualification of voters provides in pertinent part as follows:
 "A. All qualified electors of the political subdivision ordering the election shall be entitled to vote in an election on the issuance of bonds, levying or increase of a tax, or the assumption of indebtedness by the political subdivision, and such bonds may be issued, such tax levied or increased, or indebtedness assumed if approved by a vote of a majority in number of the qualified electors voting on the proposition at such election as is provided in this Chapter. No voter shall be required to sign a ballot or vote the assessed valuation of property." (Emphasis added)
Based upon the foregoing, it is the opinion of this office that despite the language of La. R.S. 38:1770, any election for the imposition of an acreage tax must be conducted in accordance with the Louisiana Constitution and Chapter 6-A of the Louisiana Election Code. Thus, in answer to your first question, all qualified electors are entitled to vote, regardless of whether they are landowners or not. Furthermore, the proposition can pass only if approved by a majority in number of the qualified electors voting, regardless of the amount of acres owned, if any. In other words, one man — one vote.
Your next question is whether the assessor should list the acreage tax on the tax rolls or will the acreage tax be handled within each drainage district. The answer to your question is yes, based upon the language of La. R.S. 38:1789, which provides in pertinent part as follows:
 "The assessors of the parishes in which gravity drainage districts or gravity subdrainange districts in whole or in part are located, shall assess all property in the districts for the taxes levied against the property by the drainage commission. They shall also list and extend on the assessment rolls all acreage taxes that have been assessed upon the lands of the district by the commissioners, and shall, after the assessment is completed, make in triplicate the assessment roll . . ." (Emphasis added)
You next question the voting requirements if the drainage districts decide to proceed with a millage tax. We refer you to the answer to your first question herein, as all qualified electors are entitled to vote one time in a millage election, the same as if the election were held to impose an acreage tax. Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH/