Dear Senator Ellington:
This office is in receipt of your request for an opinion of the Attorney General in regard to the dissolution of a municipality, and you indicate R.S. 33:251-266 appears applicable. However, you believe some provisions are outdated and other current laws appear to be in conflict. You observe that this office has released several opinions in this area, finding as follows:
 1. The requirement of R.S. 33:253 that only property taxpayers qualified as electors may vote is constitutional. (AGO 76-1197)
 2. R.S. 33:259 appears to be unconstitutional to the extent that it requires a voter to sign his ballot. (AG0 83-368)
 3. It is not necessary to include the taxable value of the voter's property on a ballot designed for special election called to dissolve a municipality. (AG0 83-368)
 4. The proces verbal of the election results must indicate the number and amount of taxpayers entitled to vote. (AGO 77-424)
With regard to these observations you ask the following questions:
 1. Are the provisions of R.S. 33:251 which requires "a petition signed by a majority in number and amount of the property taxpayers qualified to vote" valid?
 2. What procedure should be followed regarding holding an election on whether to dissolve such a municipality?
 3. Is Opinion 76-1107, that the requirement of R.S. 33:253 limiting voting to only property taxpayers qualified as electors constitutional, still your opinion?
4. Is the dissolution subject to federal pre-clearance?
In regard to your question whether the provisions of R.S. 33:251
requiring a petition signed by a majority in number and amount of the property taxpayers qualified to vote is valid, the jurisprudence mandates that all statutory enactments are presumed constitutional, and inasmuch as this provision has never been challenged, we would hold it is valid. Additionally, we find it analogous to the requirements of R.S. 33:172 to enlarge the boundaries of a municipality which require a petition of a majority of the registered voters and assent of twenty-five percent in value of the property of the resident property owners which is verified by the assessor from his rolls.
We note in Atty. Gen. Op. 97-416 this office observed in regard to deannexation of boundaries of the Town of Richwood that no participant in the procedure for contraction has greater or lesser rights than those granted by statutes governing annexation actions, stating, "The assessor and the registrar of voters must perform their duties as they would in an annexation procedure." Therein this office stated, "We therefore conclude that the governing body of a municipality does not have the power to enact an ordinance to de-annex property unless there is a petition or request from a majority of the registered voters and/or designated property owners within the area to be de-annexed and all other statutory requirements in regard to notice, publication and appeal have been met."
This latter conclusion by this office answers your inquiry as to what procedure should be followed regarding the holding of an election on whether to dissolve such a municipality, i.e. petition from a majority of the number and amount of the property taxpayers qualified to vote is presented to the governing authority, and "all other statutory requirements in regard to notice, publication and appeal have been met." R.S. 33:251 provides following a proper petition, the governing authority by resolution shall call for a special election for the purpose of determining whether a charter should be surrendered and the municipality dissolved. Notice as required by R.S. 33:252 must be given, and pursuant to R.S. 33:253 only property taxpayers may vote at this special election as furnished by the registrar of voters, and no defect in the list "shall affect the validity of the election unless it be established that voters were thereby deprived of votes in sufficient number and amount to have changed the result of the election." Thereafter, the counting of ballots and promulgation of the result must be in accordance with R.S. 33:261 et seq., and if any municipality is dissolved, after sixty days and no judicial contest thereof, the Governor shall issue his proclamation, declaring the charter of the corporation surrendered and the municipality dissolved, R.S. 33:263. R.S. 33:264 et seq. provides for settlement of any indebtedness, liquidation of affairs and disposition of surplus funds to the parish school board.
You ask whether Atty. Gen. Op. 76-1197 that held limiting voting to only property taxpayers was constitutional is still the opinion of this office. In this matter we note that therein this office related that more than once an opinion has been rendered that stated the requirement that a voter must own property in order to vote in an election to determine the dissolution of a municipality is constitutional, and found nothing to prompt any change of position on this particular issue.
While we recognize in Law et al v. Village of Marthaville, 195 So. 1940
(La.App. 2 Cir. 1940) that the court ruled a person should be allowed to vote in an election to determine whether a village charter should be dissolved when he then owns property although not yet on the assessors roll, and cannot vote property he has previously sold notwithstanding such property was assessed on the last filed tax rolls. However, the issue of constitutionality of restricting the voting to property owners was not raised or ruled upon.
In Atty. Gen. Op. 95-433 this office considered the validity of R.S.38:1774 which provided "only property taxpayers qualified as electors" were entitled to vote when the Gravity Drainage District called an election, and this office stated "such provision is constitutionally suspect as it creates a voting classification based upon ownership of property." The opinion further noted that in Branton v. Webster SchoolBoard, 596 So.2d 840, (2nd Cir. 1992) the court followed the ruling inCipriano v. City of Houma, 395 U.S. 701 (1969) which found that where a state statute gives the right to vote in limited purpose elections to some qualified voters, but denies it to others, the state must show that a compelling state interest exists which make such a distinction necessary.
Similarly, in Atty. Gen. Op. 95-431 this office noted that in decision after decision the United States Supreme Court has made clear that a citizen has a constitutionally protected right to participate in elections on a equal basis with other citizens in the jurisdiction, and that the states must show a compelling state interest in order to allow some qualified voters, i.e., property owners, to vote and exclude others in limited purpose elections, such as tax elections. Accordingly, whether there is a compelling state interest to allow only property owners to vote is a question that should be answered by the courts.
Moreover, this office has consistently declared it has no authority to declare a particular statute as being unconstitutional as that is distinctly a judicial function, and until the law at issue is challenged and declared unconstitutional by our judiciary, it is clothed with the presumption of validity and constitutionality.
While a suit may be instituted attacking the validity of the statute prior to calling of an election on the question of dissolution, we note R.S. 33:263 provides as follows:
 Any cause or right of action to contest the validity of the special election shall be prescribed after a period of sixty days from the date of the promulgation of the result of the election. If the validity of the election has not been judicially raised within this period, no court shall thereafter have authority to inquire into the matter. After the sixty-day period, if it appears from the proces verbal of the canvass of election returns provided for in R.S. 33:262 that a majority in number and amount of the taxpayers entitled to vote at the election have voted in favor of surrendering the charter and dissolving the corporation, and if no judicial contest thereof has been entered, the Governor shall issue his proclamation, declaring the charter of the corporation surrendered and the municipality dissolved.
In response to your inquiry whether dissolution is subject to federal pre-clearance we must conclude it would be insofar as this clearly would affect voting rights. Any acts or ordinances affecting voting issues must be federally pre-cleared in accordance with Section 5 of the Voting Rights Act of 1965, 42 UCS 1973, in order for the dissolution to be effective.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _______________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
Date Released: July 8, 2002